JAMES P. GRAVES *et al.*, Plaintiffs-Appellants, v. ARMAND DALEY, Indiv. and d/b/a Daley's Appliance, *et al.*, Defendants-Appellees.

Third District   No. 3—87—0743

Opinion filed July 14, 1988.

HEIPLE, J., dissenting.

Prusak & Winne, Ltd., of Peoria (Nathan R. Miller, of counsel), for appellants.

Arthur L. Klein, of Arnstein, Gluck, Lehr & Milligan, of Chicago, and Jeffrey A. Ryva, of Davis & Morgan, of Peoria, for appellees Heil Heating & Cooling Products and Heil-Quaker Corporation.

David B. Mueller, of Cassidy & Mueller, of Peoria, for appellee Armand Daley.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The plaintiffs, James and Joyce Graves, bring this action to recover damages resulting from a fire which destroyed the plaintiffs' home. The plaintiffs argue that the fire was caused by a defective condition in the furnace located in the basement of the home. The complaint is premised upon the theories of strict products liability and negligence and names as defendants Heil-Quaker Corporation, the manufacturer of the furnace, Armand Daley individually, and Daley's Appliance, the seller and installer of the furnace.

Western States Insurance Company (Western States) was named as the plaintiffs' insurance carrier and their subrogee. The trial court found that Western States was the real party in interest. Following the fire, Western State's expert inspected the premises and prepared a report stating that a defective condition in the furnace was the probable cause of the fire. The Graves were then paid by Western States and wanted to clear away the debris and rebuild their home. Western States then gave the plaintiffs permission to dispose of the furnace.

This suit was filed about five months later, and during discovery, Heil-Quaker requested that the plaintiffs produce the furnace for inspection. The plaintiffs responded that the furnace was unavailable. Heil-Quaker then moved for sanctions, requesting that the trial court dismiss the lawsuit or, in the alternative, bar the plaintiffs from introducing any evidence concerning the condition of the furnace. After a hearing on the defendant's motion, the trial court entered an order barring the plaintiffs from presenting any evidence regarding the condition of the furnace. Plaintiffs' motion to reconsider was denied, and the defendants then moved for summary judgment. The motion was granted, and this appeal followed.

On appeal the plaintiffs argue that the trial court abused its discretion in granting the defendant's motion for sanctions and barring the plaintiffs from presenting any evidence regarding the defective condition of the furnace.

■ Supreme Court Rule 219(c) (107 Ill. 2d R. 219(c)) provides that courts may, upon motion, enter sanctions against a party for unreasonably refusing to comply with discovery requests. The imposition of discovery sanctions pursuant to Supreme Court Rule 219 (107 Ill. 2d R. 219) rests largely in the discretion of the trial court and will not be disturbed upon review unless that discretion had been abused. *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444.

In the present case, the plaintiffs' home was destroyed by fire on December 28, 1983. Shortly after the fire a number of investigations were conducted to determine the cause of the fire. Included in these investigations were examinations by special agents of the Illinois Division of Arson Investigation and Donald Miller, of Effective Engineering. Effective Engineering and Donald Miller were engaged by Western States. The special agents concluded that the fire was incendiary and that a flammable liquid was used. Donald Miller's investigation included a thorough examination of the furnace and a number of photographs. Miller concluded that the furnace in general, and the heat recovery device in particular, experienced very high temperatures and that a tube in the heat recovery device was disconnected, which resulted in the fire.

Approximately three to four months after the fire, and after Miller had prepared his report implicating the furnace, Western States told Mr. and Mrs. Graves that they could dispose of the furnace. The Graves followed Western States' direction and destroyed the furnace.

This suit was filed approximately five months later, on November 14, 1985. The trial court found that Western States was the real party

in interest. The trial court granted the defendant's motion for sanctions which sought to bar the plaintiffs from presenting any evidence concerning the furnace.

■ The trial court's decision was correct. Examining the record, the trial court could have and did determine that Western States permitted the furnace to be destroyed after a decision was made to claim that responsibility for the loss was that of the defendants.

The preservation of an allegedly defective product is of upmost importance in both proving and defending against a strict liability action. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444.) In *Ralston*, the plaintiff claimed damages resulting from defects in a seat belt designed and manufactured by the defendants. The trial court ordered that no destructive testing of the seat belt be performed. Nevertheless, plaintiff's expert disassembled and tested the belt in a manner which "thoroughly and permanently compromised" the validity, credibility and possibility of accuracy of any future test on the seat belt. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444.) On the defendant's motion the trial court barred plaintiff from presenting any evidence at trial regarding the condition of the allegedly defective seat belt. The appellate court affirmed, holding that the sanction was appropriate and was appropriately placed on the party responsible for the failure to preserve the product.

A similar result was reached in *Stegmiller v. H.P.E., Inc.* (1980), 81 Ill. App. 3d 1144, 401 N.E.2d 1156. In *Stegmiller*, the appellate court affirmed the dismissal of the plaintiff's complaint as a sanction for her failure to produce an allegedly defective product. The plaintiff's contention that the product had been lost, and therefore could not be produced, was held insufficient to avoid the sanction.

The plaintiffs attempt to distinguish *Ralston* and *Stegmiller* by arguing that, unlike the plaintiffs in those cases, they did not violate specific court orders or perform destructive testing. Although it is correct that the plaintiffs did not violate court orders, the fact remains that the furnace was destroyed by plaintiffs at Western States' suggestion. The plaintiffs are not free to destroy crucial evidence simply because a court order was not issued to preserve the evidence. Further, the furnace was destroyed by the plaintiffs after their expert had examined it and before the suit was filed, thus, the court could not have issued a preservation order.

The plaintiffs argue that this case is similar to *Applegate v. Seaborn* (1985), 132 Ill. App. 3d 473, 477 N.E.2d 75. In *Applegate*, the appellate court found that an order entered by the trial court barring the testimony of an expert listed as a plaintiff's witness was not war-

ranted under the circumstances. There the plaintiff had filed a strict liability count and a negligence count based upon defects in the front differential housing of a truck. The differential had been examined by a metallurgical expert who disposed of the housing following his examination. The trial court granted the defendant's motion for sanctions and barred the expert from testifying in the matter. The appellate court reversed the sanction, finding that there was no basis in the record for concluding that the plaintiff had control over the vehicle parts or that he ever had the ability to comply with the motion to produce the housing. *Applegate v. Seaborn* (1985), 132 Ill. App. 3d 473, 477 N.E.2d 75.

The facts in the present case are distinguishable from *Applegate*. In this case the trial court could have and did find that Western States was the real party in interest. The plaintiffs destroyed the furnace after receiving permission to do so from Western States. This is not a case where the evidence was innocently or negligently destroyed. In the instant case the plaintiffs willingly caused the furnace to be destroyed with Western States' approval. The plaintiffs and Western States had complete control of the furnace from the date of the fire. In *Applegate*, the plaintiff's expert received the parts directly from the truck manufacturer-defendant, the plaintiff never had control over the parts, nor did anyone ever indicate to the expert that he could not destroy the parts. In the present case, Western States and the plaintiffs knew, or should have known, that a defective condition of the furnace, the item they allege caused the fire, was a crucial piece of evidence and should have been preserved.

For the foregoing reasons the judgment of the circuit court of Knox County is affirmed.

Affirmed.

WOMBACHER, J., concurs

JUSTICE HEIPLE, dissenting:
The majority decision in this case is without support in case law, in statute or in court rule. That is to say, it enunciates a wholly new proposition of law. The proposition is that a party may be barred from introducing testimony or other evidence on any matter relating to physical evidence if the physical evidence has been disposed of and cannot be produced.

In the case at hand, the plaintiff has been barred from presenting evidence regarding a defective furnace because the furnace was dis-

posed of and could not be produced for the defendant's inspection. The justification for the ruling is that the destruction of the furnace was done corruptly by the plaintiff in order to secure an unfair advantage in a lawsuit that was being contemplated but not yet filed.

While I question the finding that the destruction was corrupt, that particular point is not material. In fact, the State Fire Marshal had fully investigated the fire, the insurance company had done likewise, and the homeowners wanted to get the fire debris disposed of. Even accepting the bad light put on plaintiffs' actions, however, it should not make any difference. The point is that at the time of destruction of the furnace, there was no lawsuit on file and no directive from any court prohibiting the plaintiffs from hauling their fire debris to the junkyard. Later, when the plaintiffs were directed to produce the furnace, the order could not be complied with because it was impossible for them to do so.

Interestingly, in the case at hand, the furnace itself was not the only material evidence relating to the cause of the fire. It is equally arguable that all of the fire scene evidence was material. The burned house and its contents could or might show that the fire began in a different area than the furnace, say from a hot electrical wire or from a combustible agent, etc.

The precedential implications of this ruling are truly enormous. Future plaintiffs may likewise find themselves tossed out of court because they tossed out their junk. It could be a wrecked car, a severed body part, an item of clothing, a bandage, a dead cat. Who knows? Doubtless, resourceful defendants will find good reasons for claiming that plaintiffs corruptly destroyed this or that item of physical evidence knowing full well that a lawsuit was being contemplated and that the evidence would be material.

Finally, regarding the furnace in this case, it seems to me that the defendants, who were the manufacturers and installers of the furnace in question, would have been well able to meet the plantiffs' case with the testimony of their own designers, engineers and installers. The destruction of the ruined furnace by the plaintiffs really only goes to the weight of plaintiff's evidence and could be considered by the jury in light of all the evidence in the case.

The action taken by the trial court in this case and affirmed by a majority of this appellate court has deprived plaintiffs of their day in court and has created an unfortunate precedent in so doing.

Accordingly, I dissent.