H AND H SAND AND GRAVEL HAULERS COMPANY *et al.*, Plaintiffs-Appellants, v. COYNE CYLINDER COMPANY, Defendant-Appellee.

Second District    No. 2—93—0595

Opinion filed April 15, 1994.—Rehearing denied May 12, 1994.

James T. Ferrini, Edward M. Kay, Melinda S. Kollross, and Susan Condon, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, for appellants.

John W. Roberts and Stephen P. Jeffirs, both of Kirkland & Ellis, of Chicago, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The plaintiffs, H&H Sand & Gravel Haulers Company, Illinois Mining Company, f/k/a I-M Sales Corporation, Capital Bank & Trust, as trustee under trust number 627, and 28W129 Industrial Avenue Investment, filed a complaint against various defendants on theories

of negligence and strict product liability. The complaint sought recovery for damages to the plaintiffs' business premises resulting from an explosion and fire in unincorporated Barrington, Illinois. All of the defendants, with the exception of Coyne Cylinder Company, entered into settlement agreements with the plaintiffs and were dismissed from the case. Prior to trial, the court entered an order barring the plaintiffs from presenting expert testimony concerning whether gasoline-powered equipment caused the explosion and fire. Thereafter, the court entered another order barring the plaintiffs from presenting expert testimony by Robert Bambenek, or any other Rule 220 witness, concerning tests or inspections on the acetylene cylinder or valve, due to the "plaintiffs' loss, spoliation or destruction of numerous pieces of evidence." Summary judgment was entered in favor of Coyne Cylinder Company. The plaintiffs appealed. For the following reasons, we reverse and remand.

H&H Sand & Gravel Haulers Company is an Illinois corporation engaged in the business of transporting construction materials such as limestone, sand, and gravel. Illinois Mining Corporation, f/k/a I-M Sales Corporation, is an Illinois corporation in the business of brokering aggregate materials for use in construction. H&H and Illinois Mining conducted their business from a building located at 28W129 Industrial Road in unincorporated Barrington, Lake County, Illinois. Capital Bank & Trust as trustee under trust number 627, and 28W129 Industrial Avenue Investment, were legal title holders with beneficial interest in the property. Coyne Cylinder Company, the sole non-settling defendant, is a California corporation which manufactures and distributes acetylene gas cylinders.

On April 13, 1989, the building located at 28W129 Industrial Road was substantially destroyed in an explosion and resulting fire. A State fire investigator, Angelo J. Zito, examined the scene the following day. It is undisputed that the following items were found in the box of a GMC truck which was housed in the building: a gasoline-powered welder with a two-gallon gasoline tank, a gasoline-powered generator with a two-gallon gasoline tank, an open gasoline can used for filling the gasoline tanks, an oxygen tank, a standard cylinder, or tank, used to contain acetylene gas, and two 100-foot hoses attached to the oxygen and acetylene tanks. Zito determined that the valve on the acetylene gas tank was open. He also discovered that the hose connected to the acetylene cylinder was torn. Zito and two other fire investigators concluded that the explosion and fire were caused by the ignition of acetylene gas which leaked into a frayed section of the hose when the valve to the acetylene cylinder was left open by the plaintiffs' employees.

The plaintiffs hired Robert Bambenek, a gas engineer, to conduct a cause and origin investigation. Bambenek examined the scene and observed that the walls of a GMC truck housed in the building had exploded, rather than imploded. On this basis, Bambenek concluded that the explosion originated inside the box of the truck. Bambenek examined each of the items in the truck, as well as the bed of the truck. If gasoline had leaked from the welder, generator, or gasoline can, there would have been a heavy char and burn pattern on the floor of the truck from a rolling fire typical in gasoline fires. He examined the truck bed for evidence of a gasoline fire in the form of a deep hole or char, or a classic spill and drip pattern and found no significant burning of the truck floor. Thus, Bambenek concluded that the fire was not caused by a gasoline spill or a leak from the welder or generator.

After examining the cylinder used to contain acetylene gas, Bambenek determined that there was a gas leak at the top of the cylinder. Bambenek took the acetylene cylinder and valve from the premises to conduct a more extensive examination. He completely dismantled the cylinder by disconnecting the valve from the cylinder and removing the fusible plug and POL fitting. The entire investigation was photographed. A leak test identified a leak in the packing material at the connection between the cylinder and valve. Bambenek estimated that the connection was leaking 6 to 10 cubic feet of acetylene gas per hour for at least two or three hours before the explosion. Further investigation indicated that there were defective threads at the valve's connection with the acetylene cylinder, that the threads and the threaded connection were not properly sealed, and that a screen was improperly installed in the cylinder which interfered with the tightening of the valve.

In Bambenek's opinion, the defective threads in the valve's connection with the acetylene cylinder caused a catastrophic leak a few hours before the explosion. He opined that the pilot light of a portable heater approximately 10 feet from the box of the truck was the most probable ignition source of the explosion. A spark from a cutting saw 15 feet away from the truck was the second most probable ignition source.

On April 11, 1991, two years after the explosion, the plaintiffs filed suit to recover damages in excess of $250,000 for losses to their property and business resulting from the explosion and fire. On March 11, 1992, the original complaint was amended to add Coyne Cylinder Company, the manufacturer of the acetylene cylinder involved in the explosion, as a defendant. The amended complaint sought damages against Coyne Cylinder on theories of negligence

and strict product liability. The complaint alleged that Coyne manufactured and distributed the acetylene cylinder and the attached cylinder valve involved in the explosion. The negligence count alleged that Coyne had a duty to manufacture, inspect, test, and supply cylinders which were reasonably safe and would not leak acetylene gas and that Coyne breached this duty by (1) failing to properly connect the cylinder valve to the acetylene cylinder; (2) failing to adequately inspect the threaded connection between the cylinder and valve; (3) failing to adequately test the connection or implement testing procedures to detect a poorly threaded connection; (4) failing to reject or impound the cylinder which showed obvious signs of a poorly threaded connection; and (5) failing to detect that the threaded connection violated Federal regulations. The strict liability count alleged that the acetylene cylinder was unreasonably dangerous, unsafe, defective, prone to leak, and violated Federal regulations.

Coyne engaged in discovery of evidence regarding the cause and origin of the explosion and fire. In July 1992, the plaintiffs were served with requests to produce the acetylene cylinder, valve, hose, and related torch equipment pursuant to Supreme Court Rule 214 (134 Ill. 2d R. 214). It is undisputed that the welder, the generator, and the hose attached to the cylinder were not retained. At his discovery deposition, Bambenek testified that he did not preserve the hose because there was no evidence that the hose burst. He also stated that he made no effort to preserve the gasoline-powered equipment.

Following Bambenek's deposition, the plaintiffs were served with requests to admit pursuant to Supreme Court Rule 216 (134 Ill. 2d R. 216) regarding their handling of the physical evidence. The requests to admit alleged that the plaintiffs were in sole possession of the acetylene cylinder and valve, acetylene hose, gasoline-powered equipment, overhead heaters, and other items and that the plaintiffs destroyed the evidence or altered it from its condition immediately following the occurrence. The plaintiffs never responded to the requests.

In the fall of 1992, each defendant retained an expert to review the remaining evidence. Upon examining the remnants of the truck, each of the defense experts recognized a large charred area in the center of the truck bed. All three experts independently concluded that the most probable cause of the explosion and fire was ignition of gasoline vapors by a spark from a saw operated by the plaintiffs' employees 15 feet away from the truck. The experts were unable to examine the condition of the gasoline-powered welder and generator,

the overhead heating unit, and the walls of the truck, since they were not retained by the plaintiffs or their agents.

The defense experts attempted to evaluate Bambenek's opinions regarding the acetylene gas leak and the allegedly defective threaded connection between the cylinder and valve. Since Bambenek removed and disassembled the valve during his inspection, the defense experts were unable to perform tests to challenge his findings.

On November 18, 1992, Coyne moved to bar the plaintiffs from introducing evidence relating to (1) the acetylene leakage rate calculations and leak tests performed by Bambenek; (2) the condition of the welder, compressor, and acetylene hose; and (3) the condition of the truck immediately following the explosion. The motion alleged that Bambenek performed destructive testing on the valve and that all of the equipment on the truck was lost or destroyed by the plaintiffs' expert, which severely prejudiced Coyne by depriving it of the opportunity to conduct an independent investigation.

The plaintiffs responded to Coyne's motion by asserting that the defense experts thoroughly examined the acetylene cylinder and valve. Coyne's expert, Robert Campbell, testified that he would *not* have tested the cylinder for leaks because, in his opinion, such tests would be insignificant following exposure to fire and extinguishment efforts.

On December 14, 1992, the trial court partially granted Coyne's motion to bar. The plaintiffs' experts were precluded from testifying about their inspection of the gasoline-powered equipment. They were also precluded from rendering an opinion concerning whether the gasoline-powered equipment caused the explosion.

In February 1993, the defense deposed Angelo Zito, the State fire marshal who examined the scene following the explosion. Contrary to Bambenek's deposition testimony, Zito testified that an extensive portion of the 100-foot acetylene hose survived the explosion and was connected to the tanks. Zito further testified, contrary to Bambenek, that the acetylene cylinder was left open by the plaintiffs' employees and the ignition of acetylene gas which leaked through the torn and frayed hose was the probable cause of the explosion.

On the day of trial, all defendants, with the exception of Coyne, entered into settlement agreements with the plaintiffs and were dismissed from the case. Coyne renewed its motion to bar the plaintiffs' experts on the basis that Zito's deposition "revealed that the plaintiffs also destroyed the acetylene hose that was connected to the cylinder." The trial court entered an order barring the plaintiffs from presenting any evidence or testimony from Robert Bambenek, or from any other Rule 220 expert (see 134 Ill. 2d R. 220), regarding

tests or inspections on the acetylene cylinder and valve due to the "plaintiffs' loss, spoliation or destruction of numerous pieces of evidence, including the acetylene hose connected to the acetylene cylinder and valve at issue, as well as certain items of gasoline-powered equipment and disassembly in testing on the valve and cylinder."

Coyne subsequently moved for summary judgment on the basis that the plaintiffs had no credible evidence of liability. The plaintiffs did not oppose the motion, and summary judgment was entered in Coyne's favor. After the court's ruling, the plaintiffs moved for an evidentiary hearing on the issue of whether Coyne incurred prejudice due to the lost or destroyed evidence. The motion was denied, but the plaintiffs were allowed to file Bambenek's deposition in lieu of an offer of proof.

On April 7, 1993, the plaintiffs filed a motion to reconsider the prior rulings on the basis that (1) Coyne misrepresented that "new evidence" revealed the acetylene hose was destroyed; (2) there was no showing that the failure to retain evidence was deliberate; (3) the defense experts examined the cylinder and valve; (4) Coyne was unable to establish prejudice due to the failure to preserve the acetylene hose since its expert testified that the probable cause of the explosion was gasoline leakage; and (5) there was no competent evidence that the acetylene cylinder was open, thereby supporting a theory that the acetylene gas leaked through a torn hose. At the hearing on the plaintiffs' motion to reconsider, the court explained that it barred the plaintiffs' expert testimony since the only physical evidence that remained related to their own theory of liability. In the court's opinion, the plaintiffs' conduct in spoliating and destroying evidence was egregious. The motion to reconsider was denied.

The plaintiffs filed a notice of appeal from the sanction order barring expert testimony concerning the gasoline-powered equipment, from the sanction order barring testimony by Robert Bambenek or any other Rule 220 witness concerning tests or inspections performed on the acetylene cylinder and valve, and from the order entering summary judgment in favor of Coyne. The plaintiffs contend that the discovery sanctions and order entering summary judgment in Coyne's favor must be reversed to allow the plaintiffs' claims to be tried on the merits. First, we will address the propriety of the sanction orders.

The appropriate sanction for a discovery violation is a matter within the trial court's discretion, which will not be disturbed on review absent an abuse of that discretion. (*Kmoch v. Klein* (1993), 245 Ill. App. 3d 308, 312.) Once the trial court has imposed a sanction for noncompliance with a discovery rule, the sanctioned party bears

the burden of establishing that the noncompliance was reasonable or justified by extenuating circumstances or events. *Hartnett v. Stack* (1993), 241 Ill. App. 3d 157, 173.

Supreme Court Rule 214 allows a party to request the production of tangible evidence for inspection and testing. (134 Ill. 2d R. 214.) Supreme Court Rule 219(c) authorizes the trial court to bar testimony as a sanction for a party's *unreasonable* refusal to comply with requests for discovery, including the production of tangible evidence. (134 Ill. 2d R. 219(c)(iv).) A party's noncompliance is "unreasonable," thereby warranting the imposition of sanctions, when there has been a deliberate and pronounced disregard for a discovery rule. (*Hartnett*, 241 Ill. App. 3d at 173.) In determining whether a party's conduct has risen to this level, a court may consider the importance of the information to be produced. *American Family Insurance Co. v. Village Pontiac-GMC, Inc.* (1992), 223 Ill. App. 3d 624, 627.

■ The next issue is whether the sanction imposed was appropriate. In considering whether a particular sanction was just, a court must consider the conduct that gave rise to the sanction order and the effect of that conduct on the parties. (*Hartnett*, 241 Ill. App. 3d at 173.) Factors to consider in determining whether the exclusion of a witness was an appropriate sanction are: (1) surprise to the adverse party; (2) the prejudicial effect of the proposed testimony; (3) the nature of the proposed testimony; (4) the diligence of the adverse party; (5) whether objection to the proposed testimony was timely; and (6) the good faith of the party calling the witness. (*Boatmen's National Bank v. Martin* (1993), 155 Ill. 2d 305, 314.) It has been held that a "just" sanction pursuant to Supreme Court Rule 219(c) is one which, to the degree possible, ensures both discovery and a trial on the merits. *Wakefield v. Sears, Roebuck & Co.* (1992), 228 Ill. App. 3d 220, 226.

Barring a witness from testifying is a drastic sanction for discovery abuses and should be exercised sparingly. If the witness barred is the party's sole witness, this type of sanction can result in disposal of a claim without a trial. (*Palmer v. Minor* (1991), 211 Ill. App. 3d 1083, 1087.) Nevertheless, Illinois courts are becoming less tolerant of discovery violations, even if a case will be disposed of on the basis of the sanction imposed, rather than on a trial on the merits. *Atwood v. Warner Electric Brake & Clutch Co.* (1992), 239 Ill. App. 3d 81, 90.

*Graves v. Daley* (1988), 172 Ill. App. 3d 35 (Heiple, J., dissenting), presents a factual scenario similar to that of the instant case. In *Graves*, the plaintiffs' home was destroyed by a fire. A number of investigations were conducted to determine the cause of the fire. An

expert hired by the plaintiffs' homeowner's insurance carrier inspected the premises and filed a report stating that a defective condition in the furnace caused the fire. Photographs of the furnace and the inspection were taken. The plaintiffs destroyed the furnace with the permission of their homeowner's insurance carrier. Five months later, the plaintiffs filed suit against various defendants to recover damages resulting from the fire based on theories of negligence and strict product liability. During discovery, one of the defendants filed a request for the plaintiffs to produce the furnace for inspection. The plaintiffs responded by reporting that the furnace had been destroyed. Pursuant to motion by the defense, the court barred the plaintiffs from introducing any evidence concerning the condition of the furnace. Summary judgment was entered in favor of the defendants.

Prior case law upheld orders barring expert testimony when evidence was lost or when destructive testing was performed in violation of a court order. (See *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050; *Stegmiller v. H.P.E., Inc.* (1980), 81 Ill. App. 3d 1144. Contra *Applegate v. Seaborn* (1985), 132 Ill. App. 3d 473.) The court responded to the plaintiffs' suggestion that they did not violate any court order or perform destructive testing by stating that "[t]he plaintiffs are not free to destroy crucial evidence simply because a court order was not issued to preserve the evidence." (*Graves*, 172 Ill. App. 3d at 38.) Although the lawsuit had not been filed at the time the furnace was destroyed, the court opined that the plaintiffs and their insurance carrier "knew, or should have known, that a defective condition of the furnace, the item they allege caused the fire, was a crucial piece of evidence and should have been preserved." (*Graves*, 172 Ill. App. 3d at 39.) The sanction order and resulting summary judgment order were affirmed.

In his dissent, Justice Heiple noted that the majority concluded the furnace was corruptly destroyed by the plaintiffs to secure an unfair advantage in a lawsuit that was contemplated but not yet filed. In Justice Heiple's opinion, the majority's decision will lead to the "unfortunate" result in which future plaintiffs are "tossed out of court because they tossed out their junk." (*Graves*, 172 Ill. App. 3d at 40 (Heiple, J., dissenting).) A resourceful defendant could take advantage of the ruling by seeking dismissal when any evidence useful to the defense was destroyed. Justice Heiple noted that the missing furnace would not preclude the defendants from establishing an effective defense to the lawsuit. The manufacturer of the allegedly defective furnace could present the testimony of its own designers, engineers, and installers to refute the plaintiffs' claims of negligence

and strict product liability. In Justice Heiple's opinion, the evidence concerning the condition of the furnace after the fire would not destroy a defense, *but would go to the weight attributed to the plaintiffs' investigator.*

We recently addressed this same issue in *American Family Insurance Co. v. Village Pontiac-GMC, Inc.* (1992), 223 Ill. App. 3d 624. In *American Family*, the plaintiffs' automobile caught fire while parked in their garage and destroyed their home and other property. The plaintiffs' expert investigated the scene the day following the fire. In his opinion, the fire was caused by defective wiring in the automobile. The expert removed the wires he believed caused a short circuit and took photographs of the automobile and other damaged property. Seven months later, the car was salvaged by the plaintiffs' automobile insurance company. Thereafter, the plaintiffs filed a complaint against the car dealership and General Motors alleging negligence and strict product liability. Prior to trial, the court granted the defendants' motion to bar all evidence concerning the condition of the automobile since it was destroyed, thereby depriving the defendants of the opportunity of conducting an independent investigation to determine the cause and origin of the fire. Summary judgment was entered in favor of the defendants.

On appeal, this court affirmed the discovery sanctions and summary judgment order on the basis that the "plaintiffs intentionally allowed the most crucial piece of evidence *** to be destroyed." (*American Family*, 223 Ill. App. 3d at 627.) Although the lawsuit had not been filed at the time the automobile was destroyed, the court reaffirmed the majority opinion in *Graves* and rejected Justice Heiple's dissent, by stating that the "[p]laintiffs should have known that potential defendants to a case alleging negligence and product liability would undoubtedly want to inspect, as plaintiffs' experts had done, and perhaps test the object *alleged to have caused the damage.*" (Emphasis added.) (*American Family*, 223 Ill. App. 3d at 627.) Although the plaintiffs retained two wires and photographed the inspection of the vehicle, the court expressly determined that the evidence would not serve as a sufficient substitute for an independent investigation by the defense. (*American Family*, 223 Ill. App. 3d at 628.) Since the plaintiffs could not establish a *prima facie* case of negligence or strict product liability without the evidence surrounding their expert's investigation of the vehicle, we affirmed the summary judgment order in favor of the defendants.

As indicated by both *Graves* and *American Family*, a sanction which precludes a trial on the merits is only appropriate when the defense has incurred prejudice by the alteration or destruction of a

crucial piece of evidence. In *Nehring v. First National Bank* (1986), 143 Ill. App. 3d 791, the plaintiff filed suit against the First National Bank in De Kalb, Illinois, seeking damages and other relief, for conversion of his valuable collection of silver coins held in the bank's vault. An amended complaint alleged that the bank negligently allowed the sheriff to execute claims against the coins. The defendant engaged in discovery and requested the plaintiff to produce any and all documents relating to the silver coins at issue. The plaintiff responded by stating that he could not produce the documents because they were stolen and were no longer capable of being produced. Pursuant to motion by the defendant, the plaintiff's complaint was dismissed with prejudice as a sanction for abuse of the discovery process.

On appeal, the court determined that there was no showing that the documents in question were deliberately destroyed by the plaintiff. Although the court opined that some sanction was appropriate, the dismissal of the plaintiff's complaint was unjust and constituted an abuse of discretion. According to the *Nehring* court, the defendant did not endure any prejudice resulting from the missing documents since there was sufficient evidence to conduct a trial on the merits. The order of dismissal was reversed, and the cause was remanded to the trial court for trial with directions to consider another appropriate sanction. *Nehring*, 143 Ill. App. 3d at 802-05.

We reached a similar result in *Kmoch v. Klein* (1993), 245 Ill. App. 3d 308. In *Kmoch*, the plaintiff filed suit alleging negligence against a school for handicapped children when he was molested by an employee of the school during his stay as a student. The parties engaged in a lengthy and "wrangled" discovery process. Prior to trial, the court dismissed the plaintiff's case as a sanction for noncompliance with discovery orders. Although we noted that "some sanction" was warranted for the plaintiff's incomplete and untimely answers to discovery, we held that the dismissal was unwarranted and constituted an abuse of discretion. We reasoned that the defense made no reasonable claim that they incurred prejudice resulting from the discovery violations. On this basis, we stated that "the ultimate sanction of dismissal of the action is not warranted where [the] defendant has not been prejudiced and a trial on the merits can be had." *Kmoch*, 245 Ill. App. 3d at 314.

We find Coyne's reliance on both *Graves* and *American Family* is misplaced. In both *Graves* and *American Family*, the plaintiffs disposed of the *entire* defective product, which was the *only* item alleged by *either party* to have caused the damage and the *sole theory*

of liability. Although complaints had not been filed, the courts held that the plaintiffs should have known the evidence would be crucial to the proofs presented in their case in chief, and to the defendants in establishing their defense.

■ In the instant case, nearly three years after the explosion and fire, and one year after the initial complaint was filed, the plaintiffs amended their complaint alleging negligence and strict product liability to name Coyne Cylinder, the manufacturer of the acetylene cylinder, as a defendant. Coyne Cylinder engaged in discovery and served the plaintiffs with requests to produce the acetylene cylinder, valve, hose, and related torch equipment. Coyne was allowed to examine the cylinder and valve, but prior experimentation by the plaintiffs' expert, Robert Bambenek, altered its condition such that it was impossible to independently ascertain its unaltered state subsequent to the explosion and fire.

The defense claims that Bambenek conducted destructive and sanctionable experimentation of the acetylene cylinder and valve which deprived it of an opportunity to conduct an independent investigation of the cylinder in its condition after the explosion and fire, thereby depriving it of establishing a defense. Contrary to the situation in *Graves* and *American Family*, the allegedly defective product, the acetylene cylinder, was not destroyed, but was altered from its condition following the fire. It is arguable that an investigation of the cylinder in its condition following the fire would have been helpful in establishing a defense with greater certitude. However, the defense expert, Robert Campbell, expressly disavowed any interest in testing the cylinder following the explosion. Campbell testified that he would not have conducted a leak test on the cylinder because he would expect it to leak after it was subjected to the explosion and extinguishment efforts. The acetylene cylinder *was* available for investigation by the defense, as were the photographs and notes taken during Bambenek's examination. The fact that Coyne declined its right to conduct an inspection of the acetylene cylinder diffuses its claim of prejudice.

Likewise, Coyne's claim that it was unreasonably prejudiced due to the destruction of the welder, generator, and hose attached to the acetylene cylinder is unsubstantiated. Contrary to *Graves* and *American Family*, these items were destroyed after Bambenek, the plaintiffs' expert, and Zito, the State fire marshal, eliminated gasoline vapors as a cause of the explosion. At the time the evidence was discarded, the sole theories on the cause of the explosion related to the acetylene cylinder. It was only after Coyne Cylinder was added as a defendant that the defense theorized that the fire was caused by

the ignition of gasoline vapors. Bambenek took photographs of the welder, the generator, the bed of the truck, and the surrounding area. These items were available to Coyne for inspection and could be utilized for questioning at trial. The plaintiffs cannot be held to take extraordinary measures to retain and preserve items which were not relevant to either of the parties at the time they were destroyed.

We recognize the importance of preserving an allegedly defective product in both proving and defending against a strict liability action. (*Graves*, 172 Ill. App. 3d at 38.) However, when the alteration or destruction of evidence does not prevent a party from establishing its case, there has been no prejudice, and sanctions which deprive the parties of a trial on the merits are inappropriate. As in *Kmoch* and *Nehring*, and contrary to *Graves* and *American Family*, Coyne did not incur substantial prejudice as a result of Bambenek's alteration of the acetylene cylinder or from the destruction of the welder, generator, and oxygen tank.

Notwithstanding the missing items in the instant case, the parties' claims and defenses could be fully and effectively litigated on the merits. To refute Bambenek's conclusions that the fire was caused by the ignition of acetylene gas from a defective cylinder, Coyne could present its expert, Robert Campbell, to testify that his investigation revealed gasoline fuel on the inside of the truck, that there was damage to the truck bed characteristic of a gasoline spill, and that there were holes in the truck bed through which a spill could have leaked. On this basis, Campbell would testify that, in his expert opinion, the explosion was caused by the ignition of gasoline vapors, and not from acetylene gas leakage. As Justice Heiple noted in *Graves*, Coyne Cylinder could present the testimony of its own designers, manufacturers, and installers to refute the plaintiffs' allegation that the acetylene gas cylinder was unreasonably dangerous. At trial, Coyne would be able to cross-examine Bambenek regarding his handling of the acetylene cylinder, valve, generator, and welder. Assuming the evidence adduced at trial creates a factual issue regarding the missing evidence, Coyne could request the court to give IPI Civil 3d No. 5.01, to inform the jury that if a party has failed to offer evidence within his power to produce, the jury may infer that the evidence would have been adverse to that party. Illinois Pattern Jury Instructions, Civil, No. 5.01 (3d ed. 1992).

In considering whether it was appropriate to bar a witness' testimony as a discovery sanction, courts must consider the conduct of the parties as well as the prejudicial impact of the testimony. Although the evidence in this case was not retained by the plaintiffs or

their agents, there was no showing that it was done in bad faith. At the time the welder, generator, and hose were destroyed, all the experts involved in the case eliminated gasoline leakage as a cause of the explosion. Three years after the explosion, the plaintiffs amended their complaint to add Coyne Cylinder as a defendant. This is the first time that gasoline leakage became an issue in the lawsuit. The evidence does not establish that the plaintiffs deliberately destroyed relevant evidence harmful to their case.

When the evidence available to both parties does not prohibit either party from establishing his case, a sanction which disposes of a claim without a trial on the merits constitutes an abuse of discretion. After considering the conduct of the plaintiffs and their expert, and the factors announced in *Boatmen's National Bank* (155 Ill. 2d at 314), we determine that the sanctions entered by the trial court which barred expert testimony concerning whether the gasoline-powered equipment caused the explosion and fire and which barred Bambenek or any other Rule 220 expert from testifying of tests and inspections on the acetylene cylinder were unreasonable, unjust, and constituted an abuse of discretion.

As a result of the trial court's sanction orders, summary judgment was entered in favor of Coyne Cylinder. While a plaintiff need not prove the case at the summary judgment stage, enough evidence must be presented in support of each element of the causes of action asserted to create a genuine issue of material fact. (*Atwood v. Warner Electric Brake & Clutch Co.* (1992), 239 Ill. App. 3d 81, 90.) Without expert testimony concerning whether the gasoline-powered equipment caused the explosion and fire and concerning tests or inspections on the acetylene cylinder, the plaintiffs were unable to present sufficient evidence in support of their causes of action for negligence and strict product liability. The pleadings, depositions, affidavits, and admissions on file created no genuine issue of material fact and the court ruled that Coyne Cylinder was entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1992).

To prevail at the summary judgment stage in a product liability case, the plaintiff must present evidence that the injury or damage resulted from a condition of the product, that the condition of the product was unreasonably dangerous, and that the condition existed at the time the product left the manufacturer's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623; *Sanchez v. Firestone Tire & Rubber Co.* (1992), 237 Ill. App. 3d 872, 873.) These elements may be proved inferentially, by either direct or circumstantial evidence. Proper circumstantial evidence would include either proof that tends to exclude other extrinsic causes or expert testimony that the prod-

uct was defective. (*Sanchez*, 237 Ill. App. 3d at 874.) To survive a motion for summary judgment in a negligence case, the plaintiff must present facts sufficient to establish that the defendant owed a duty of care, that the defendant breached the duty, and that the plaintiff incurred injuries proximately caused by the breach. *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 421.

■ After reviewing the pleadings, depositions, affidavits, and admissions included in the record, including the deposition testimony of Robert Bambenek submitted by the plaintiffs as an offer of proof, we determine that there is a genuine issue of material fact concerning the cause of the explosion and fire. Therefore, the trial court erred by entering summary judgment in favor of Coyne Cylinder.

For the foregoing reasons, we reverse both the sanction order which barred the plaintiffs from presenting expert testimony concerning whether the gasoline-powered equipment caused the explosion and fire and the sanction order which barred Robert Bambenek's testimony and the testimony of any other Rule 220 witness concerning tests or inspections on the acetylene cylinder and valve. We also reverse the order of Lake County entering summary judgment in favor of Coyne Cylinder and remand the cause to the trial court for a trial on the merits.

Reversed and remanded.

INGLIS, P.J., and GEIGER, J., concur.