Andrew E. THOMAS, Plaintiff,

v.

BOMBARDIER–ROTAX MOTORENFABRIK, GmbH, et al., Defendants.

No. 93 C 702.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 1, 1994.

---

**6.** Indeed, Smith does not even allege that these five positions within HIS were filled at all.

552

Richard James Grossman, Steinberg, Burtker & Grossman, Ltd., Chicago, IL, for plaintiff Andrew E. Thomas.

Robert M. Greco, Steven Joseph Rotunno, Sedgwick, Detert, Moran & Arnold, Chicago, IL, David DeBusschere, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for Bombardier–Rotax Motorenfabrik GESmbH, a Foreign Corp.

John A. Fiorenza, Jeffrey M. Leggett, Fiorenza & Hayes, S.C., Milwaukee, WI, Gerald P. Lucey, South Barrington, IL, for Decker Aero Power, Inc., a Foreign Corp.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Andrew Thomas (Thomas) brought this diversity action against defendants Bombadier–Rotax Motorenfabrik, GmbH (Rotax), an Austrian corporation, and Decker Aero Power, Inc. (Decker Aero), alleging that defendants were negligent, had breached an implied warranty of safety, and are strictly liable for the injuries sustained by him when his experimental ultra-light aircraft crashed during a test flight. The aircraft was equipped with an engine manufactured by defendant Rotax, and was sold to him by defendant Decker Aero. Before us now is defendants' motion to bar evidence relating to the engine and the ultra-light aircraft, alleging that Thomas has failed to

preserve the material evidence in this case, specifically the engine and the ultra-light aircraft. For the following reasons defendants' motion is denied.

## BACKGROUND

Before 1991 Thomas piloted planes on only a recreational basis. Of particular interest to him was a type of aircraft called "ultra light" aircraft (Thomas Dep. at 15). Thomas decided that he could design a better ultra-light aircraft than was currently offered on the market,[1] and in 1991 he formed a corporation, Desert Hawk Flight Works, Inc. (Flight Works), through which he intended to design, build, and ultimately sell his creations. (*Id.* at 7.) After working in the design business full-time, Thomas developed an ultra-light aircraft he called the "Prairie Hawk." (*Id.* at 9.) He equipped the Prairie Hawk with an engine manufactured by Rotax and sold to him by Decker Aero.

On May 7, 1992, Thomas took the Prairie Hawk on a test flight. According to Thomas, the engine suddenly stopped at an altitude of approximately 300 feet and crashed into the ground. Allegedly, Thomas was severely injured in the accident. Six weeks later Thomas returned to the hangar and inspected the Prairie Hawk to determine the cause of the crash. *Id.* at 40. He was unable to determine the cause for the engine failure himself, so he turned to Decker Aero for assistance. *Id.* at 39–40. Over the phone Steve Decker, president of Decker Aero, walked Thomas through different checks of the engine. *Id.* After this phone consultation revealed that one of the pistons was damaged, Decker suggested that Thomas send the engine back to Decker Aero so that it could be taken apart to determine the cause and to make repairs. *Id.* Decker Aero took the engine apart and discovered the magneto side cylinder head had been installed backwards (Mielke Dep. at 31). It replaced the damaged parts and sent the engine back to Thomas (Decker Dep. at 52). At no time did Thomas reveal that he was injured or was contemplating litigation. The Prairie Hawk

aircraft itself did not make out so well. Aside from a few salvageable parts, the aircraft was destroyed. Thomas salvaged what he could and then sold the rest for scrap.

Thomas filed a diversity action against Decker Aero and Rotax, alleging that they are liable for the injuries he suffered during the crash. Thomas brings three counts, one alleging negligence, one alleging strict liability, and one alleging breach of implied warranty. Decker Aero filed a motion to dismiss on jurisdictional grounds, which this court denied on August 5, 1993. Rotax then filed this present motion, in which Decker Aero joins, alleging that by sending the engine off to be repaired, and by disposing of the Prairie Hawk, Thomas has failed to preserve the material evidence in this case, and asks this court to bar any evidence relating to the condition of the aircraft or the engine. Defendants also seek summary judgment on the grounds that, if they are successful in barring the evidence, Thomas could not make out a *prima facie* case without the barred evidence.

## DISCUSSION

### A. Illinois or Federal Law

As an initial matter we must determine whether defendants' motion is governed by Illinois or federal law. Since this court is sitting in diversity we must apply the substantive rules of Illinois, *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and the procedural rules of the federal courts. *Hanna v. Plumer,* 380 U.S. 460, 465, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965). The question arises whether the preservation of material evidence is a matter of procedure or substance. Judge Aspen has concluded that under the "outcome determinative" test employed in *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945), "[the] pre-suit duty to preserve material evidence is substantive and, as such, Illinois law governs." *State Farm Fire & Casualty v. Frigidaire,* 146 F.R.D. 160, 162 (N.D.Ill.1992). We

---

1. Thomas did not have any formal training in aeronautical engineering. Also, although his previous work experience included designing ventilation systems, he never was previously involved with aeronautical design.

agree with Judge Aspen and look to Illinois law to examine defendants' claim.

### B. *Motion to Bar Evidence*

Illinois Supreme Court Rule 219(c) gives trial courts the discretion to bar evidence or dismiss an action for unreasonable noncompliance with discovery rules. *Shelbyville Mut. Ins. Co. v. Sunbeam Leisure Products Co.*, 262 Ill.App.3d 636, 199 Ill.Dec. 965, 969, 634 N.E.2d 1319, 1323 (5th Dist.1994). Given that "the preservation of an allegedly defective product is of utmost importance in both proving and defending against a strict liability action," *Graves v. Daley*, 526 N.E.2d 679, 681 (3d Dist.1988), a number of Illinois appellate courts[2] have concluded that the destruction of material evidence, such as the defective product in a strict liability action, is a violation of discovery rules appropriate for sanctions. *See Shelbyville Mut. Ins. Co. v. Sunbeam Leisure Products Co.*, 262 Ill. App.3d 636, 199 Ill.Dec. 965, 634 N.E.2d 1319 (5th Dist.1994); *H & H Sand & Gravel Haulers Co. v. Coyne Cylinder Co.*, 260 Ill. App.3d 235, 198 Ill.Dec. 367, 632 N.E.2d 697 (2d Dist.1994); *American Family Ins. Co. v. Village Pontiac GMC Inc.*, 223 Ill.App.3d 624, 166 Ill.Dec. 93, 585 N.E.2d 1115 (2d Dist.1992); *Graves v. Daley*, 172 Ill.App.3d 35, 122 Ill.Dec. 420, 526 N.E.2d 679 (3d Dist. 1988); *State Farm Fire & Casualty v. Frigidaire*, 146 F.R.D. 160 (N.D.Ill.1992). Furthermore, sanctions may be imposed "despite the absence of a court order barring destruction." *Village Pontiac*, 585 N.E.2d at 1118. As a result of these cases it is a substantive requirement of each potential litigant in Illinois to preserve the integrity of material evidence. This duty is one of reasonableness and "[i]n determining unreasonable noncompliance, a court may focus on the importance of the information a party is seeking to have produced." *Id.* Even if noncompliance was shown, sanctions are not appropriate, however, unless the movant can establish prejudice by his inability to examine the spoliated evidence. *H & H Sand & Gravel*, 632 N.E.2d at 704–05.

If a litigant's conduct is sanctionable, the trial court must also determine what the appropriate sanction should be. *H & H Sand & Gravel Haulers*, 632 N.E.2d at 701. In this analysis "a court must consider the conduct that gave rise to the sanctions [motion] and the effect of that conduct on the parties." *Id.* The Second District Appellate Court of Illinois has suggested various factors that should influence a court's determination as to what sanction to impose. These factors include the good faith of the parties, the surprise and prejudicial effect of the evidence, and the diligence of the parties. *Id.* at 701–02. Finally, all courts recognize that "courts should be reluctant to grant the extreme sanction of barring evidence when that ruling effectively resolves the case against the proponent of the evidence." *Shelbyville Mut.*, 634 N.E.2d at 1324.

With these principles in mind, we now turn to defendants' claim that because Thomas sent the engine back to Decker Aero to be repaired and sent the Prairie Hawk to the scrap yard, he has failed to preserve the material evidence in this case. We will examine the two pieces of evidence, the engine and the plane, separately.

First, we decline to exercise our discretion to bar evidence relating to the engine. The issue presented by the repair of the engine is one of first impression in Illinois. Since it is uncontroverted that Decker Aero was the party who actually repaired the engine (and thus altered it from its post-accident condition), defendants are seeking to bar evidence that was spoliated when they controlled the evidence. Defendants fail to cite a single Illinois case in which the trial court barred a plaintiff's evidence that the defendant spoliated. Rather, the courts note that the plaintiff had exclusive control over the material evidence.[3] *See, e.g., Shelbyville*

---

2. The Illinois Supreme Court has not passed on this issue.

3. It is not clear whether exclusive control is a necessary element for these types of motions. Even if it is not, the Illinois cases do indicate that whether the plaintiff did have exclusive control is yet another factor that trial courts should consider in deciding whether to impose sanctions on the plaintiff. *See, e.g., Shelbyville Mut.*, 634 N.E.2d at 1324; *Frigidaire*, 146 F.R.D. at 163.

*Mut.,* 634 N.E.2d at 1324; *Frigidaire,* 146 F.R.D. at 163.

To get around this problem, defendants claim that Thomas should be sanctioned because he allegedly instructed Decker Aero to repair the engine. Were we to agree with defendants' assessment of the situation, we might agree with their suggested outcome.[4] However, Thomas testified at his deposition that Decker Aeero was the party who first suggested that the engine be sent back for examination (Thomas Dep. at 40). Defendants offered no evidence contradicting Thomas' testimony. At this point, Thomas was in the dark as to the cause for the engine seizure, and by sending the engine to Decker Aero he was merely cooperating with the retailer in a joint effort at discerning the reason for the crash (Thomas Dep. at 39–40). The fact that as a result the engine is not in the exact condition it was after the crash is an unfortunate, but not sanctionable, outcome. We find no bad faith or lack of diligence on behalf of Thomas that would justify the severe sanction that defendants are seeking.

Defendants also claim that Thomas should be sanctioned for their spoliation of the engine because he neglected to tell Decker that he was contemplating litigation. The record reveals, however, that Thomas was not contemplating litigation at this stage. In fact, defendants did not demonstrate that Thomas knew or should have known that he had a cause of action against defendants.[5] Defendants do not explain why Thomas should have anticipated this litigation any more than they. Decker Aero knew of the crash (albeit not that Thomas was injured), knew the engine stopped, and knew before Thomas did that the cylinder head was installed backwards.

Further, Decker Aero is the only party to thoroughly examine the engine to determine the cause of the accident. Indeed, Thomas never had an expert examine the engine, which further distinguishes this case from the Illinois caselaw cited by defendants. In each of those cases the plaintiffs anticipated litigation, had their own expert examine the product, then disposed of it before the defendant had a chance to conduct his own examination. *See e.g., Village Pontiac,* 585 N.E.2d 1115. Therefore, we do not believe that defendants are overly prejudiced by introduction of this evidence.

▪ Rotax claims that whether or not Decker Aero prevails on its motion, Rotax is entitled to bar the evidence since it had nothing to do with the change in the engine. Thomas counters that Decker Aero is an agent for Rotax, making Rotax bound by Decker's conduct with respect to the engine. We decline to determine whether there was an agency relationship between Decker and Rotax since it is not material here. Rather, whether or not an agency relationship exists, Thomas was not responsible for the change in the engine and therefore should not be sanctioned by dismissing his action. To defend this motion, Thomas need not prove that each defendant was at fault;[6] rather, he needs to show that he did not unreasonably fail to comply with the discovery rules. Since Thomas did not have exclusive control

---

**4.** Since we granted Thomas the leave to file a belated Local Rule 12 Statement of Facts we need not accept as true the assertions made in defendants' Local Rule 12 motion.

**5.** The Illinois cases all involved plaintiffs who knew or should have known that the spoliated evidence would be material in pending or contemplated litigation. For example, in *Village Pontiac* the court found that the non-movant "unquestionably knew the importance of the car in allowing defendants to prepare a defense." *Id.* In *Graves* the court specifically noted that "[the non-movant] permitted the furnace to be destroyed after a decision was made to claim that responsibility for the loss was that of the defendants." *Graves,* 526 N.E.2d at 422. In

*Frigidaire,* Judge Aspen noted "[t]here is no question that [the non-movant] knew the allegedly defective dishwasher would be material in this case." *Frigidaire,* 146 F.R.D. at 163. While it is not clear whether Illinois courts *require* that the plaintiff knew or should have known there might be litigation, it does appear that it is a factor that should be considered when deciding whether to exercise our discretion.

**6.** In saying that Thomas was not at fault, we do not mean to imply that defendants need to prove Thomas' willful destruction of the evidence. Rather, if Thomas had negligently disposed of the evidence, for example by losing it, then defendants might have prevailed. *See, e.g., Shelbyville Mut.,* 634 N.E.2d at 1324.

over the engine, and since he was not the party who repaired the engine, Thomas should not suffer the severe sanction of dismissal. Since we conclude that Thomas did nothing warranting the severe sanction sought, Rotax is no more entitled to prevail than Decker Aero.

■ The destruction of the Prairie Hawk proves to be more problematic in that Thomas was the only party in control of the aircraft and neither defendant participated in its destruction. Nevertheless, we feel that defendants have failed to demonstrate that they are prejudiced by their inability to examine the aircraft. *See H & H Sand & Gravel Haulers*, 632 N.E.2d at 704–05. Defendants claim that a number of things could have caused the engine to "seize," including "an improper oil-gas mixture, an air leak if the carburetor is not properly secured, failing to properly 'break in' the engine, faulty operation of the engine" in addition to a cylinder head being installed backwards (Def.Rule 12(M) Statement of Facts at ¶ 20). However, defendants have not demonstrated how examination of the aircraft would aid them in determining whether any of these causes were to blame here. Defendants point to the deposition testimony of Steve Decker and Charles Mielke as support for their conclusion that the aircraft is material evidence. However, the cited testimony only reveals that "there's a thousand reasons that an engine can seize" (Decker Dep. at 83), but not how examination of the aircraft is necessary to determine if these causes played a part in the crash. Thus, this case is similar to *H & H Sand & Gravel Haulers*, in which the court held "when the alteration or destruction of evidence does not deprive a party from establishing their case, there has been no prejudice and sanctions which deprive the parties a trial on the merits are inappropriate." *H & H Sand & Gravel Haulers*, 632 N.E.2d at 705.

## C. Breach of Warranty

■ Defendants claim that Thomas cannot recover under breach of implied warranty because it was not he, but rather his corporation, Flight Works, that paid for the engine. Defendants contend that any implied warranty runs with the contract of sale and therefore did not extend to Thomas individually. Defendants cite no cases to support this point, but rather quote for us § 2–314 of the Uniform Commercial Code which states in part that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Thomas counters that Illinois does not maintain a privity requirement when the plaintiff is seeking damages for personal injury, and that he was a third party beneficiary under the contract and therefore covered by any warranty protection.

Generally plaintiffs suing for breach of warranty in Illinois must establish both vertical and horizontal privity. However, there appear to be exceptions to this general rule.[7] Defendants' motion is focused on Thomas' lack of horizontal privity. Unfortunately, the Illinois Supreme Court has yet to decide the privity requirements when dealing with horizontal privity. We will therefore follow the lead of the Illinois appellate courts who have decided that horizontal privity is not required when suing under an implied warranty for personal injury, "as long as the safety of the employee and the use of the goods were either implicitly or explicitly part of the basis of the bargain when the employer purchased the goods." *Wheeler v. Sunbelt Tool Co., Inc.*, 181 Ill.App.3d 1088, 130 Ill.Dec. 863, 871, 537 N.E.2d 1332, 1340 (4th Dist.), *appeal denied*, 127 Ill.2d 644, 136 Ill.Dec. 610, 545 N.E.2d (1989); *see also Whitaker v. Lian Feng Mach. Co.*, 156 Ill.App.3d 316, 108 Ill.

---

7. Lack of vertical privity occurs when a consumer seeks to sue a remote manufacturer who was not involved in the sale to the consumer. Lack of horizontal privity occurs when a user of the product beside the consumer is injured. The Illinois Supreme Court has held that vertical privity is not required "when a buyer who has sustained personal injury predicates recovery against a remote manufacturer on the theory of

implied warranty." *Szajna v. General Motors Corp.*, 115 Ill.2d 294, 104 Ill.Dec. 898, 901, 503 N.E.2d 760, 763 (1986) (citing *Berry v. G.D. Searle & Co.*, 56 Ill.2d 548, 309 N.E.2d 550 (1974)). In *Szajna* the court refused to extend *Berry* and instead held that privity is required when the plaintiff is suing to recover for purely economic injury.

Dec. 895, 898–99, 509 N.E.2d 591, 594–95 (1st Dist.1987) (which also "overruled" any inconsistent cases of the First District).[8] *Wheeler* noted the *dicta* by the Illinois Supreme Court that § 2–318 leaves " 'a door at least slightly ajar' " for this abolition of the privity requirement. *Wheeler,* 537 N.E.2d at 1340 (quoting *Collins Co., Ltd. v. Carboline Co.,* 125 Ill.2d 498, 127 Ill.Dec. 5, 13, 532 N.E.2d 834, 842 (1988)). In their motion defendants do not contend that the safety of the employees was not at least implicitly part of the bargain between Flight Works and Decker Aero, but rather argue that even if there was such a warranty Thomas could still not prevail. We disagree. The motion is denied.

8. The UCC now has three versions of § 2–318 on whether third parties not in privity are able to sue under warranty claims. Illinois has adopted the first and most restrictive version of § 2–318. Nevertheless, the Illinois Appellate courts have concluded that the Illinois legislature has not closed off further abolishing the privity requirement, concluding that "the legislature left it for the courts to decide, in accord with common law principles and the guidance of the UCC, whether warranty coverage should further extend to any other non-purchasing users of a product." *Whitaker,* 509 N.E.2d at 594 (citing the Comments to § 2–318).