David D. **COLE**, Plaintiff,

v.

**KELLER INDUSTRIES, INC.,** Defendant.

Civ. A. No. 3:94CV375.

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 18, 1994.

Thomas Bryan Byrne, Richmond, VA, for plaintiff.

Steven Colin McCallum, Terrence Mitchell Bagley, McGuire, Woods, Battle & Boothe, Richmond, VA, for defendant.

### MEMORANDUM OPINION

SPENCER, District Judge.

This product liability case arises out of an accident involving a Keller Model No. 926 six-foot aluminum ladder used by the plaintiff, David Cole ("Cole"). Defendant Keller Industries, Inc. ("Keller") has moved for summary judgment on the grounds of spoliation of evidence, and failure to provide timely notice of the alleged breach of warranty. For the reasons stated hereinafter, the defendant's motion is hereby GRANTED, and Plaintiff's case is dismissed *in toto*.

### I

On June 15, 1991, Cole was using a ladder manufactured by the defendant to install a ceiling fan for an apartment tenant. At that time, he was employed as an apartment maintenance technician. Cole alleges that as he descended to the third step of the ladder, one of the six rivets broke, causing him to slip and fall. No witnesses were present at

the time. As a result, Cole claims he sustained neck and back injuries which have required several operations.

In 1991, Cole's attorney, Brian Byrne ("Byrne"), obtained the ladder. By early 1992, Byrne had hired Kenneth C. Taber ("Taber") as an engineering consultant and expert witness to inspect the ladder. In January or February of 1992, Byrne shipped the ladder to Taber for testing.

When the ladder was presented to Taber, the third step was attached to the ladder's siderails by six rivets—two each on the left and right front of the step and one rivet each on the left and right rear. Taber used a disk grinder to ground off the heads of the left front rivets which "became dust on the garage floor" and were "swept away into the trash." Taber Deposition, at 60 (October 11, 1994). The step was removed by grinding the heads from the two front rivets and forcing the rivets on the right side to fail. Taber Report, at 2 (June 27, 1992). Taber then used a hacksaw to cut out a portion of the step's left rear section which contained the left rear rivet. Taber Dep., at 71.

On June 27, 1992, Taber drafted a report which claimed the front left rivets on the third step were "loose in their holes" and constituted a manufacturing defect "responsible for the rear rivet's failure." Taber Report, at 3. After making these observations, Taber maintained possession of the ladder for over two years, during which time he "lost" two additional rivets, one from the right front and one from the right rear, both of which had been sheared from the third step. Taber Dep., at 62–64.

On October 12, 1992, Byrne notified Keller for the first time of his client's claim for injuries. Byrne claimed the two front rivets were "not securely riveted into place in order to safely secure the step." Letter from Bryan Byrne to Keller Industries, dated October 12, 1992. This defect allowed an overload on the rear rivet which contributed to the shearing off of the rivet. *Id.* Byrne failed to inform Keller of the destructive testing that had occurred.

Plaintiff filed suit on June 14, 1993, but did not serve Keller until February 17, 1994. On March 29, 1994, in response to discovery requests, Plaintiff identified Taber as his expert witness and provided Keller with a copy of Taber's 1992 report. Keller demanded that Plaintiff endorse an order preventing further destruction of evidence. After refusing Defendant's demand, this Court issued a non-destruct order on September 27, 1994.

On October 6, 1994, the last day for disclosure of experts under the pretrial order, Plaintiff identified a new expert, James Foster. Apparently, Foster's opinion does not rely upon the destroyed or lost evidence. Contrary to the allegations made by Plaintiff in his complaint and throughout the course of this litigation, Foster believes the rivet holes in the siderails were too large, and the rivet material was too hard. These defects allegedly caused the rivet to crack internally when it was set during the manufacturing process. Pl.Motion in Opp., at 2.

## II

■ Defendant maintains that the destructive testing performed by Plaintiff's original expert, Taber, prevented Defendant from inspecting the failed step and rivets in their original condition. Plaintiff, on the other hand, contends the defendant has not been prejudiced, since the defendant's experts have purportedly "indicated in their report that the third step played no role in the accident." Pl.Motion in Opp., at 4. Plaintiff also notes that the defendant can use photographs of the ladder before the destructive testing was conducted, and that any demonstrative evidence the defendant wishes to use at trial could be accomplished by using an exemplar ladder.

■ Under Virginia law, to prevail in a product liability suit a plaintiff must be able to make two threshold showings. First, he must prove that an "unreasonably dangerous condition existed when the goods left the defendant's hands," and that the product "was not substantially changed after the time of the sale." *Stokes v. L. Geismar, S.A.*, 815 F.Supp. 904, 907 (E.D.Va.1993) (quoting *Logan v. Montgomery Ward & Co., Inc.*, 216 Va. 425, 219 S.E.2d 685 (1975)), *aff'd*, 16 F.3d 411 (4th Cir.1994). Second, he must demonstrate with reasonable certainty that the de-

fendant caused the plaintiff's injuries. *Id.* (quoting *Boyle v. United Tech. Corp.,* 792 F.2d 413, 416 (4th Cir.1986)).

The preservation of the allegedly defective product is of "utmost importance" in defending against a product liability suit. *See Graves v. Daley,* 172 Ill.App.3d 35, 122 Ill. Dec. 420, 422, 526 N.E.2d 679, 681 (1988). In *American Family Ins. Co. v. Village Pontiac-GMC, Inc.,* 223 Ill.App.3d 624, 166 Ill.Dec. 93, 585 N.E.2d 1115 (1992), an allegedly faulty car wire caused the destruction of plaintiffs' home and other personal property. *Id.* at 95, 585 N.E.2d at 1117. Plaintiffs' expert removed the wire which he believed caused the short circuit, and the plaintiffs thereafter permitted the destruction of their car. In explaining why exclusion of evidence and summary judgment is necessary in spoliation cases, the Court noted:

> Plaintiffs should have known that potential defendants to a case alleging negligence and product liability would undoubtedly want to inspect, as plaintiffs' experts had done and perhaps test the object alleged to have caused the damage.... Although two wires from the car were saved and plaintiffs have photographs of the car and other damaged property, defendants were unable to inspect, as plaintiffs' experts were, the most important evidence because of plaintiffs' actions. Plaintiffs were the only individuals with first-hand knowledge of the physical evidence which is far more probative under these circumstances in determining whether the vehicle caused the fire than photographs and two wires taken from the trunk area. The physical object itself in the precise condition immediately after an accident may be far more instructive and persuasive to a jury than oral or photograph descriptions.... As a matter of sound public policy, an expert should not be permitted intentionally or negligently to destroy such evidence and then substitute his or her own description of it.

*Id.* at 96, 585 N.E.2d at 1118 (citations omitted). *See also State Farm Fire & Casualty Co. v. Frigidaire,* 146 F.R.D. 160, 163 (N.D.Ill.1992) (fact that plaintiff's expert cut wiring harness, which he claimed caused home fire, from bottom of allegedly defective dishwasher does not mitigate plaintiff's failure to preserve the rest of the product itself).

In the instant case, Plaintiff has substantially prejudiced Defendant by permitting the destruction of crucial evidence. The ladder is unavailable for inspection in its original post-accident condition, and crucial components of the ladder, including the allegedly failed step in its original condition as well as five of the rivets, were never subjected to any examination by Keller because of their destruction or loss.

Plaintiff's conduct with regard to the destruction of the ladder warrants sanction. In the above-cited cases, the sanction imposed was to bar all evidence, direct and circumstantial, concerning the condition of the allegedly defective product. In the instant case, this sanction is functionally equivalent to dismissal, as Plaintiff cannot establish a prima facie case of product liability or negligence in the absence of evidence regarding the condition of the product.

Even assuming, *arguendo,* that Plaintiff could somehow construct a plausible case without such evidence, dismissal is nevertheless warranted as Plaintiff's actions have irreparably prejudiced Defendant. Most poignant is the fact that Defendant's experts have been forced to construct a defense based on nothing more than leftover scraps of an alleged accident. Under such circumstances, this Court is convinced that there are no means of curing Defendant's prejudice short of granting summary judgment.

### III

Although this determination properly disposes of Plaintiff's case *in toto,* this Court nevertheless notes that dismissal of Plaintiff's breach of warranty claims is proper based on Plaintiff's failure to give Defendant reasonable notice pursuant to Virginia Code § 8.2–607(3)(a). That section provides, in pertinent part:

> (3) Where a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy....

Two policy rationales behind this notice requirement include protecting sellers from stale claims, and allowing sellers sufficient time to prepare for litigation by investigating and collecting potential evidence. *See Hebron v. American Isuzu Motors, Inc.,* No. 93–1520–a, slip op. at 3 (E.D.Va. May 25, 1992); 1 James J. White & Robert S. Summers, *Uniform Commercial Code,* 555 (3rd ed. 1988).

The issue of reasonable notice, although usually a jury issue, "becomes a question of law appropriate for summary judgment ... when the facts are undisputed and only one inference can be drawn as to reasonableness and timeliness of notice." *Smith–Moore Body Co. v. Heil Co.,* 603 F.Supp. 354, 356 (E.D.Va.1985); *Begley v. Jeep Corp.,* 491 F.Supp. 63, 65 (W.D.Va.1980) ("if the evidence is clear, the court can rule as a matter of law that a party failed to give proper notice"). In *Smith–Moore,* a merchant buyer of an allegedly defective truck body failed to notify the seller until seven months after the accident giving rise to the lawsuit. 603 F.Supp. at 355. The court explained this delay was unreasonable as a matter of law as it deprived the seller of an opportunity to investigate the accident in a timely manner, or to investigate or inspect the allegedly defective equipment. *Id.* at 357.

Official Comment 4 accompanying Va.Code § 8.2–607, makes the reasonable notice requirement applicable to retail buyers as well. *See Hebron v. American Isuzu Motors, Inc.,* No. 93–1520–a, slip op. at 3 (E.D.Va. May 25, 1992) (notice by retail buyer of allegedly defective automobile was unreasonable as a matter of law, where buyer disposed of automobile and failed to notify manufacturer of its alleged breach of warranty until two years after the accident).

■ In the instant case, Plaintiff's accident occurred on June 15, 1991. On October 12, 1992, Plaintiff's counsel notified the defendant of the alleged injuries and defects. By that time, to the detriment of the defendant, Plaintiff's expert had completed his destructive testing of the ladder. Under such circumstances, this Court believes such notice was unreasonable as a matter of law.

■ Plaintiff urges that notice was not required since the ladder was purchased by Plaintiff's employer, Hickory Creek Apartments. However, Comment 5 to § 8.2–607 shows a clear intent that the notice provision was intended to extend to third-party beneficiaries. *See Ratkovich v. Smithkline,* 711 F.Supp. 436, 438 (N.D.Ill.1989). *Young v. J.I. Case,* No. 3:90CV630, 1994 WL 506403 (E.D.Va. June 3, 1991), relied upon by Plaintiff, is inapposite. In that case, this Court concluded that the policy reasons underlying the notice provision were not implicated given the facts of that case. Unlike *Young,* however, Plaintiff's prolonged delay and destruction of evidence prior to notifying Defendant unquestionably invokes the principles behind the rule.

■ Plaintiff further urges that his notice to the defendant of the alleged breach of warranty 3½ months after his expert submitted his findings constitutes "reasonable notice." This Court disagrees.

Virginia Code § 8.1–204(2) provides "[w]hat is a reasonable time for taking any action depends upon the nature, purpose and circumstances of such action." In *Begley v. Jeep Corp.,* 491 F.Supp. 63, 66 (W.D.Va. 1980), the court suggested that discovery of a breach of warranty commences when a plaintiff recognizes the defendants' products were involved, and a "potential warranty claim" could be asserted against them. In *Steel & Wire Corp. v. Thyssen, Inc.,* 20 U.C.C. Rep. Serv. 892, 1976 WL 23706 (E.D.Mich.1976), the court held that a merchant buyer failed to timely notify the manufacturer, in spite of its argument that it did "not really learn of the defect until it completed its investigation" of defendant's steel. The court rejected this argument, explaining that as soon as plaintiff learned there "might be a problem with the steel [plaintiff] could have put the defendant on notice." *Id.* at 898, 1976 WL 23706. *See also* Va.Code § 8.2–607, comment 5 (Michie 1991) ("even a beneficiary can be properly held to the use of good faith in notifying, once he has had time to become aware of the legal situation").

The instant case involved an arguably patent defect, involving a broken rivet. Although this Court is not willing to stipulate

that discovery of defendant's breach commenced at the very moment Plaintiff was injured, the record indicates that Plaintiff obviously became aware of his claim well before the date Defendant was actually notified. In 1991, Cole's attorney obtained the ladder. By early 1992, Plaintiff's counsel had hired an expert witness to inspect the ladder. This expert admits that before he conducted testing, he was aware that the case involved a legal claim that would ultimately go to litigation. *See* Taber Dep., at 39. On June 27, 1992, this expert drafted a report explaining the ladder's defects. Nevertheless, Plaintiff waited until October 12, 1992, to notify the defendant. As noted above, by that time Plaintiff's expert had completed his destructive testing of the ladder, thereby depriving Keller of the opportunity to investigate Plaintiff's claim.

To the extent Plaintiff contends he did not discover, nor could have discovered, Defendant's breach before June 27, 1992, this Court nevertheless notes that Plaintiff's delay of approximately 3½ months before notifying Defendant was unreasonable as a matter of law. It was during this interim that Plaintiff's expert probably lost additional evidence. *See* Taber Dep., at 63. Plaintiff has offered no explanation for his tardiness. Given Plaintiff's prolonged delay prior to June 27, 1992, and his additional unexplained delay thereafter, Plaintiff's conclusory statement that "three and one-half months ... constitutes reasonable notice" is without merit.

Plaintiff's burden in the instant case was relatively simple. Official Comment 4 to § 8.2–607 states that notification need only be sufficient to let the seller know that the transaction is still troublesome and must be watched. Although this Court recognizes that Comments 4 and 5 to § 8.2–607 warrant a relaxing of the notification requirements under the present circumstances, Plaintiff's delay was nevertheless unreasonable as a matter of law. Plaintiff has failed to proffer a sufficient explanation for his delay. Accordingly, summary judgment with respect to Plaintiff's breach of warranty claims is appropriate.

## IV

For the reasons stated hereinabove, Defendant's motion is hereby GRANTED. An appropriate Order shall issue.