**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DAVID D. COLE,
Plaintiff-Appellant,

v.                                                                                     No. 94-2576

KELLER INDUSTRIES, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-94-375)

Argued: July 13, 1995

Decided: January 6, 1998

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Widener wrote
the opinion, in which Judge Russell and Judge Hall joined.

_____

**COUNSEL**

**ARGUED:** Thomas Bryan Byrne, Richmond, Virginia, for Appellant.
Terrence Mitchell Bagley, Sr., MCGUIRE, WOODS, BATTLE &
BOOTHE, L.L.P., Richmond, Virginia, for Appellee. **ON BRIEF:**
Stephanie L. Karfias, MCGUIRE, WOODS, BATTLE & BOOTHE,
L.L.P., Richmond, Virginia, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

Plaintiff-appellant David Cole appeals the grant of summary judgment against him in his suit alleging products liability and breach of warranty against defendant-appellee Keller Industries, Inc. We vacate and remand.

In June, 1991, David Cole, an apartment maintenance man, was injured while using a ladder manufactured by Keller Industries. Cole alleges that as he descended to the third step of the ladder, a rivet broke, which had fastened the left rear of the step to the ladder's side rail, causing him to fall.

The ladder was made of aluminum, and both the side rails of the ladder and the steps were made of channels, with the open sides of the channels facing in on the side rails, and the open side of the channels facing down on the steps. The ends of the steps fit just inside the channels of the side rails, and the vertical sides of the step channels were secured to the short sides of the side rail channels by rivets. There were two rivets in the front, that is the side facing out, and one rivet in the rear, that is the side facing in. The six rivets secured each step, four in the front and two in the rear.

The plaintiff had two experts examine the ladder, and the defendant had two experts examine the ladder. At this point, it is well to consider their reports and factual findings.

First, and of considerable significance, is the fact that all four of the experts agreed that the rivet failed which held in place the left rear of the step involved. None of the other five rivets in that step failed. There is no doubt of the failure. The experts are not agreed as to when the failure occurred, the effect of the failure, or the cause of the failure, but the fact of the failure is acknowledged by all.

Plaintiff's expert, Taber, concluded that the left front rivets were loose in their holes, which caused an undue strain on the left rear rivet, which caused the failure. Plaintiff's expert, Foster, was of opinion that the ladder was defectively manufactured in that the cracking of the failed rivet started upon the setting of the rivet, and he concluded that the ladder was defectively designed because the holes in the side rail and the step were too large for the rivet. He also con-

2

cluded that the rivets were too hard, which was a design defect. Both of plaintiff's experts were of opinion the failing of the rivet caused or contributed to plaintiff's fall.

The defendant's experts came to different conclusions. The Ver Halens were of opinion that the failed rivet had been broken before the plaintiff's use complained of here. They concluded that, since the plaintiff had used the ladder more than 20 times and the rivet had been broken for a considerable period of time, the plaintiff's fall was not due to a failure of the rivet on the day in question and that the ladder was not defective as designed and manufactured. They found the failed rivet was the result of excessive forces beyond normal product use.

Defendant's expert, Lytton also concluded that the rivet fracture did not occur at the moment of loss of balance by the plaintiff but had occurred some time during earlier use and that the ladder was subsequently used with the broken rivet without incident many times. He concluded that the ladder had no design or manufacturing defects and that the materials used were proper for their intended use.

Cole retained attorney T. Bryan Byrne who hired engineering consultant and expert witness Kenneth C. Taber to inspect the ladder. To remove the step from the ladder, Taber ground off the heads of the rivets at the left front of the step, forcibly broke the right rivets, and hacksawed out a portion of the step surrounding the left rear rivet. On June 27, 1992, Taber reported that the left front rivets were "loose in their holes," and claimed this to be the manufacturing defect that caused the rear rivet to fail. Byrne notified Keller of his client's claim on October 12, 1992, and filed suit on June 14, 1993. In the interim, Taber lost two of the right side rivets, one each from the front and rear. On October 6, 1994, within the discovery period, Cole identified a second expert, James Foster. Foster claimed "the rivet holes in the siderails were too large, and the rivet material was too hard," an opinion that "[a]pparently . . . does not rely upon the destroyed or lost evidence." Cole v. Keller Indus., Inc., 872 F. Supp. 1470, 1472 (E.D. Va. 1994).

Keller moved for summary judgment. The district court held that plaintiff's destructive testing substantially prejudiced Keller and justified imposing a sanction. Cole, 872 F. Supp. at 1473. The court dis-

3

missed plaintiff's suit on grounds that barring plaintiff from relying on the lost or damaged evidence would preclude him from establishing a prima facie case. Cole, 872 F. Supp. at 1473. The court said defendant was entitled to judgment on the breach of warranty claim independently because the three and one-half month delay between the expert's report and plaintiff's notice of claim was unreasonable as matter of law under Virginia Code § 8.2-607(3)(a). Cole, 872 F. Supp. at 1474-75.

Summary judgment is appropriate where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We review the district court's grant of summary judgment de novo. Myers v. Finkle, 950 F.2d 165, 167 (4th Cir. 1991). The trial court has broad discretion to permit a jury to draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence. Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 155-57 (4th Cir. 1995). Application of the rules with respect to the spoilation of evidence are rules of evidence administered at the discretion of the trial court. Vodusek, 71 F.3d at 155-57.

We turn first to the question of spoilation of evidence and the question of the district court's exclusion of plaintiff's evidence and then granting judgment. This circuit has addressed the spoilation of evidence rule in only one case and held that it is a rule of evidence.[1]

_____

[1] Virginia has not decided whether a presumption results after spoilation of evidence. See 9 Wigmore, Evidence§ 2524 (Chadbourn rev. 1981); 29 Am. Jur. 2d Evidence § 244 (1994). We express no opinion on that question and decline to decide whether there is such a presumption under Virginia law. Nevertheless, when a State decides that a presumption arises as Kentucky had in Welsh v. United States, 844 F.2d 1239, 1245-47 (6th Cir. 1988), Federal Rule of Evidence 302 was applied to apply state law. If Guaranty Trust Co. of New York v. York, 326 U.S. 99 (1945), as construed in Hanna v. Plumer, 380 U.S. 460 (1965), were applied here, to avoid different results depending on whether state or federal law applied, and no federal rule intervened, precedent would seem to indicate that Virginia law should apply, and bad faith would be required before a case could be dismissed for spoilation. The Virginia court so held in Gentry v. Toyota Motor Corp. , 471 S.E.2d 485 (Va. 1996). Thus, for the present appeal, the result, no matter how arrived at, would be the same as we reach in this decision. We decide neither of these other questions, however, and include mention of the same for the sake of completeness.

4

Vodusek, 71 F.3d at 155-57. In Vodusek, not basing our ruling on bad faith, we approved the trial court's instruction to the jury that it could draw an adverse inference from the plaintiff's destruction of evidence under much the same circumstances as were present here. Vodusek, 71 F.3d at 155-57. We did not address any more severe action than drawing an adverse inference, and stated that bad faith was not required to permit the jury to draw an adverse inference. Nevertheless, the vast weight of authority, including the Virginia Supreme Court, holds that absent bad-faith conduct applying a rule of law that results in dismissal on the grounds of spoilation of evidence is not authorized. See Berthold-Jennings Lumber Co. v. St. Louis, I. M. & S. Ry. Co., 80 F.2d 32, 41-42 (8th Cir. 1935); Trupiano v. Cully, 84 N.W.2d 747 (Mich. 1957); Gentry v. Toyota Motor Corp., 471 S.E.2d 485 (Va. 1996).

We do not find bad faith, or any like action, in the case at bar and therefore do not agree with the district court's drastic remedy. The plaintiff's attorney gave the ladder to Taber to determine the cause of the accident. In the course of his testing, he ground off the head of two front rivets and removed the third step. Nevertheless, there is no evidence that Taber's actions were undertaken in an effort to prevent the defendant from inspecting and testing the ladder. In fact, the defendant was able to inspect and test the ladder. It hired two experts, both of whom were able to reach conclusions regarding the cause of the accident despite Taber's mistake. They found that the rivet failed, but concluded that the rivet was not the cause of the accident because it failed during some earlier usage. (JA 71, para. 7; JA. 127, para. 5.) Indeed, this record does not show that the defendant's experts ever stated that the mistake by Taber had interfered with their investigation. Because the plaintiff, in fact, destroyed evidence, however innocently, a jury instruction, as in Vodusek, permitting an adverse inference to be drawn might have been appropriate. But that question is not before us, and because the plaintiff did not intentionally destroy the evidence, and bad faith was not shown, excluding plaintiff's evidence and granting judgment was excessive and was an abuse of discretion. The remedy chosen by the district court was simply too severe in the circumstances.

Considering the question of notice, the district court held that this non-purchaser who sued on warranty for personal injuries, was

5

required under Va. Code § 8.2-607 to provide notice to the manufacturer pursuant to § 8.2-607(3).**2** Excluding the district court's opinion in the present case, every reported case which has come to our attention, save one, has taken the position that a non-purchaser in a suit on warranty, need not comply with the notice requirement of the Uniform Commercial Code in order to recover for personal injuries rather than for economic loss. See McKnelly v. Sperry Corp., 642 F.2d 1101, 1107 (8th Cir. 1981) (applying Iowa statute); Chapman v. Brown, 198 F. Supp. 78, 85 (D. Hawaii), aff'd, 304 F.2d 149 (9th Cir. 1962) (table); Simmons v. Clemco Indus., 368 So.2d 509, 514-15 (Ala. 1979); Tomczuk v. Town of Cheshire, 217 A.2d 71 (Super. Ct., Tolland County, Conn. 1965); Chaffin v. Atlanta Coca Cola Bottling Co., 194 S.E.2d 513, 515 (Ga. Ct. App. 1972); Mattos Inc. v. Hash, 368 A.2d 993, 996-97 (Md. 1977); Frericks v. General Motors Corp., 363 A.2d 460, 463 (Md. 1976); Hill v. Joseph T. Ryerson & Son, Inc., 268 S.E.2d 296, 305 (W.Va. 1980). But see Ratkovich v. SmithKline, 711 F. Supp. 436 (N.D. Ill. 1989).**3** Ronald A. Anderson, Anderson on the Uniform Commercial Code, § 2-607:130 (1997 Revision) observes: "When a non-purchaser is entitled to sue a seller for the third person's harm resulting from a condition or defect which in itself was a breach of warranty, the requirement of notice to the seller is not applicable."

_____

**2** Code of Virginia § 8.2-607(3)(a) follows: "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." The term "buyer" is defined as "a person who buys or contracts to buy goods," § 8.2-103(a), and "seller" is defined as"a person who sells or contracts to sell goods." § 8.2-103(d).

**3** The district court relied on Ratkovich v. SmithKline, 711 F. Supp. 436 (N.D. Ill. 1989). Ratkovich held that the notice provisions of the Illinois Uniform Commercial Code applied to a non-buyer suing a manufacturer on a warranty for personal injuries sustained in utero as a result of her mother's ingestion, during pregnancy, of Dexadrine, a drug manufactured by the defendant. In reaching that conclusion, the court relied on Berry v. G.D. Searle Co., 309 N.E.2d 550 (Ill. 1979), a case involving a buyer, who suffered personal injury from using birth control pills, suing the seller of the pills, Planned Parenthood Association of Chicago. Since Berry concerns a buyer and a seller and is within the literal terms of the statute on notice, we think the reliance of Ratkovich on that case and the comment to the Uniform Commercial Code was misplaced, as was the reliance of the district court on Ratkovich.

But see James J. White & Robert S. Summers, Uniform Commercial Code, § 11-10, at 425 (2d ed. 1980) (noting that notice may be required, but not concluding that notice is required).

We are of opinion that the proper reading of the statute is that a non-purchaser is not required to give notice, under Va. Code § 8.2-607 to the manufacturer, as a condition precedent to suing on a warranty under the Virginia law for personal injuries. We recognize that, even though the text of the statute does not, the language of Official Comment 5 accompanying § 8.2-607 could be interpreted as requiring a claimant seeking relief to assume the position of the buyer and thus to comply with the notice requirement. But, if the Official Comment were meant to apply to facts such as those presently before us, that holding would reintroduce into Virginia law a requirement of privity that Virginia previously has abandoned. See Va. Code § 8.2-318 (1991); Blake Construction Co. v. Alley, 353 S.E.2d 724, 725-26 (Va. 1987); Brockett v. Harrell Bros. Inc., 141 S.E.2d 897, 901 (Va. 1965). Consequently, we hold that Official Comment 5 and § 8.2-607(3)(a) are inapplicable to require notice from the non-purchaser user to the manufacturer in a suit on a warranty for personal injuries.

The judgment of the district court is vacated and the case remanded for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.[4]

_____

[4] This case was held in abeyance for some time because Keller Industries was in Chapter 11 bankruptcy. The bankruptcy court, by order entered May 2, 1997, modified the automatic stay so as to permit this case to proceed. Accordingly, the case is no longer held in abeyance.

Each of the parties following argument in this case has made objection to the other party bringing authority to the attention of the court. All of the objections of the parties subsequent to the argument of the case to the manner or form of briefing, or with respect to authorities, are overruled.

We also have a motion to add a party to this case pursuant to a reorganization of Keller Industries in the suit in bankruptcy. We think that motion is more appropriately made in the district court on remand, and we are confident the district court will approve an agreed order to effect the changes.