UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-1721

RICHARD WARREN KING; LAURA R. KING, each
individually and d/b/a K&R King, Incorporated;
K&R KING, INCORPORATED,

Plaintiffs - Appellants,

versus

AMERICAN POWER CONVERSION CORPORATION,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  W. Earl Britt, Senior
District Judge.  (CA-03-704-5)

Argued:  March 14, 2006                    Decided:  May 17, 2006

Before LUTTIG,[*] WILLIAMS, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Charles McKinley Brittain, III, MITCHELL, BREWER,
RICHARDSON, ADAMS, BURGE & BOUGHMAN, Fayetteville, North Carolina,
for Appellants.  Mary Hulett, RAGSDALE LIGGETT, L.L.C., Raleigh,
North Carolina, for Appellee.  **ON BRIEF:** Ronnie M. Mitchell, Coy E.

---

[*]Judge Luttig heard oral argument in this case but resigned
from the court prior to the time the decision was filed.  The
decision is filed by a quorum of the panel pursuant to 28 U.S.C.
§ 46(d).

Brewer, Jr., William O. Richardson, MITCHELL, BREWER, RICHARDSON, ADAMS, BURGE & BOUGHMAN, Fayetteville, North Carolina, for Appellants. Ashley Huffstetler, RAGSDALE LIGGETT, L.L.C., Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

2

PER CURIAM:

Richard Warren King, Laura R. King, and K & R King, Inc. appeal an order of the district court dismissing their products liability claims against American Power Conversion Corporation for spoliation of the evidence.  We affirm.


I.

Richard and Laura King, doing business under the corporate name K & R King, Inc. (collectively "the Kings"), owned and operated a store that doubled as a gas station and convenience store in Fayetteville, North Carolina.  On April 23, 2001, the store was damaged by a fire that destroyed most of the inventory and rendered the facility temporarily inoperable.  The Kings, who also owned the surrounding shopping center, relocated the business to a vacant space and operated in the shopping center from May 2001 until September 2002, while repairs to the original store were completed.

The fire that damaged the Kings' property was immediately investigated by Steve Booth of the Cumberland County Arson Task Force.  Booth concluded that the fire originated in the store's office where the Kings had installed an Uninterrupted Power Source ("UPS") unit to serve as a backup power supply in case of a power outage.  The UPS was manufactured by American Power Conversion Corporation ("American Power").  Booth was unable, however, to

3

determine whether the UPS caused the fire. In his final investigation report dated May 29, 2001, Booth stated that the examination of the UPS unit had been inconclusive but that "[American Power] has been placed on notice and will test the unit themselves." J.A. 344.

Nationwide Insurance Company, the Kings' insurance carrier, retained two independent consultants to investigate the fire and to determine its cause. Christopher Elrod investigated the scene on the day following the fire, but was unable to identify the cause of the fire with certainty: "Although the exact source of ignition is unknown in this loss, the probability of the ignition of ordinary combustible materials due to an electrical malfunction at the location of a battery backup power pac cannot be eliminated." J.A. 364. Mark Kissel, a technical consultant employed by LWG Consulting who assesses damage to machinery and equipment, focused his investigation on the Kings' UPS device and other possible electrical causes of the fire. Kissel was present during Elrod's fire scene investigation and took custody of the UPS unit for further evaluation. Although Kissel did not disassemble the device, he concluded that "there was damage to the interior of the UPS unit that did not appear to have been generated from an exterior or outside source." J.A. 348-49. Kissel observed damage to the device that was consistent with "a fire that begins inside a piece of equipment," and thus concluded that "the April 23, 2001

4

fire at issue probably began within the interior of the [American Power] UPS device," indicating "a defect within the piece of equipment." J.A. 349, 350.

On June 12, 2001, Kissel reported his findings to Nationwide, opining only that the damage to the UPS unit "may indicate an incendiary failure within the UPS." J.A. 359. Significantly, Kissel explained that "no determination or conclusions can be reached with regard to the fire" without further examination which, in turn, would "require at least partial destruction of the unit." J.A. 359. Kissel recommended that American Power, as well as any other interested parties, be invited to participate in a mutual examination of the UPS unit. Finally, Kissel indicated that the unit had been packed for storage at his office until he received further instruction.

In December 2001, the Kings retained attorneys ("plaintiffs' counsel") to represent them in connection with damages caused by the fire. Plaintiffs' counsel contacted Kissel and requested that he be informed of any inspection scheduled by American Power so that the Kings could send a representative. This conversation was reflected in a follow-up letter to Kissel dated January 9, 2002, in which plaintiffs' counsel also noted that, "[s]hould you wish to remove the unit from your premises we would be happy to take possession and store it at a secure location." J.A. 457. According to plaintiffs' counsel, he reminded Kissel a number of

5

times that plaintiffs needed to be notified of further testing of the device. On April 15, 2002, plaintiffs' counsel met with Kissel in person to view and photograph the unit, and asked Kissel "to contact our firm should an inspection be scheduled and also should he wish to remove the units from his premises." J.A. 452. In February 2003, plaintiffs' counsel reiterated to Kissel their offer to safeguard the UPS device should Kissel decide he no longer wanted to store it.

On April 7, 2003, Sandra Bowden, an employee of LWG, sent a letter to Nationwide seeking permission to dispose of the UPS device. After receiving Nationwide's approval, Kissel disposed of the item on April 10, 2003. Neither the plaintiffs nor their attorneys were notified of the decision to dispose of the UPS unit.

Plaintiffs filed suit against American Power in July 2003, but they did not learn that the evidence had been destroyed until August 2003. The Kings allege that the UPS unit was defective and caused the fire that damaged their store, and they seek to hold American Power liable for these damages on theories of negligence and breach of express and implied warranties. American Power removed this action to federal court, and moved for summary judgment on the basis that the destruction of the UPS unit rendered American Power unable to mount an effective defense and warranted dismissal of the Kings' complaint. The district court agreed, concluding that "[w]ithout the UPS, [American Power] has suffered

irreparable prejudice in attempting to defend itself against plaintiffs' claims, and a lesser sanction, such as excluding any reports or testimony of the Nationwide consultants or plaintiffs' expert, would totally destroy plaintiffs' case." J.A. 247-48. The district court also concluded that, in light of the potential litigation regarding the UPS unit, the failure of plaintiffs' counsel to advise American Power of the unit's location was negligent, at best. Thus, the district court decided that the only appropriate remedy was dismissal.

II.

The district court's authority to impose sanctions for spoliation of evidence "arises from a court's inherent power to control the judicial process." Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001). When a party destroys, alters or fails to preserve property for use as evidence in reasonably foreseeable litigation such that the judicial process is disrupted, a trial court may use this power to determine an appropriate sanction. See Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); Silvestri, 271 F.3d at 590. A district court enjoys broad discretion to select a fitting response, which should serve the twin purposes of "leveling the evidentiary playing field and . . . sanctioning the improper conduct." Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995). The range of options

available to a district court includes dismissal, but such a harsh sanction should be imposed only if "a lesser sanction will [not] perform the necessary function." <u>Silvestri</u>, 271 F.3d at 590.

Because of the extreme nature of dismissal as a sanction for spoliation, it is usually appropriate "only in circumstances of bad faith or other 'like action.'" <u>Silvestri</u>, 271 F.3d at 593 (quoting <u>Cole v. Keller Indus., Inc.</u>, 132 F.3d 1044, 1047 (4th Cir. 1998)). However, bad faith conduct by the plaintiff may not be needed to justify dismissal if the spoliation of evidence effectively renders the defendant unable to defend its case. <u>See id.</u> ("[S]ometimes even the inadvertent, albeit negligent, loss of evidence will justify dismissal because of the resulting unfairness . . . ."). We have prescribed the following approach for district courts considering dismissal as a sanction for a given instance of spoliation: dismissal is appropriate only if "either (1) . . . the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) . . . the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim." <u>Id.</u>

In this case, the district court determined that dismissal was the only appropriate sanction based upon the court's finding that American Power would suffer irreparable prejudice if it were forced to mount a defense without the UPS unit. Although the district court noted that the Kings were culpable at least to some degree,

8

characterizing as negligent "their failure to directly or indirectly ensure that [American Power] had knowledge of the [UPS] unit's location and the possibility of [a] claim stemming from its alleged failure," J.A. 247, the district court concluded dismissal was required because the claims at issue could not be litigated without the UPS device. The district court explained that the only evidence available to American Power relating to the allegedly defective product was "conflicting and inconclusive" and failed to afford American Power "an appropriate substitute for the ability to conduct [its] own investigation and defense." J.A. 247. As a less severe alternative to dismissal, the district court considered but rejected the exclusion of testimony from Kissel and Elrod and their written investigation reports suggesting the UPS device may have started the fire.

On appeal, the Kings argue that their conduct and the conduct of their attorneys was not sufficiently blameworthy to permit the ultimate penalty of dismissal. They also argue that the Kings gathered sufficient evidence during their own investigation to allow American Power to evaluate the allegedly defective UPS unit, via documents and photos, and otherwise investigate the claim. Finally, the Kings contend that the district court could have imposed a lesser sanction, such as an adverse instruction to the jury, that would have leveled the playing field, punished the

conduct, but allowed the lawsuit to continue.  We address each argument in turn.

## A.

The Kings first argue that their conduct was not sufficiently culpable to justify the imposition of dismissal as a sanction, emphasizing that there was no intentional wrongdoing or bad faith conduct involved in the destruction of the UPS unit.  Indeed, there is no evidence that either the Kings or their attorneys were aware or should have been aware of the destruction of the UPS unit, much less any evidence suggesting the Kings participated or acquiesced in its destruction.

The fact that the spoliator's conduct does not involve intentional destruction of evidence, however, does not necessarily preclude the use of dismissal as a sanction.  Although a district court must find some degree of fault before imposing sanctions-- especially if the penalty is dismissal--Silvestri makes clear that the conduct need not be intentional if "it substantially denie[s] the defendant the ability to defend the claim."  271 F.3d at 593. In Silvestri, we affirmed the sanction of dismissal even though it was unclear from the record whether Silvestri's failure to preserve evidence for his subsequent products liability lawsuit was deliberate or merely negligent.  Because the unpreserved evidence was "the only evidence from which [the defendant] could develop its

10

defenses adequately," we concluded that the defendant suffered irreparable prejudice which required dismissal of Silvestri's action.  Id. at 594.

The Kings contend that Silvestri does not control because, unlike the plaintiff's attorneys in that case, counsel for the Kings reasonably believed American Power had been notified of the fire based on an unsubstantiated statement contained in the written report of the county investigator.  There is no dispute, however, that no effort was made by the Kings or their attorneys to contact American Power or verify that it had received notice.  See id. (finding negligence where "neither Silvestri nor his attorneys notified General Motors of Silvestri's claim until almost three years after the accident, by which time the evidence had been destroyed").  Accordingly, the Kings failed to discharge their duty to afford American Power sufficient notice.  See id. at 591 ("If a party cannot fulfill this duty to preserve [evidence] . . ., he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence.").

We also reject the Kings' assertion that dismissal is inappropriate because, unlike the plaintiffs in Silvestri, they took affirmative steps to preserve the evidence by maintaining contact with the consultant who had custody of the UPS device and requesting that counsel be notified before the item was removed

11

from the premises.  Dismissal is not fair, argue the Kings, because "the spoliation was the result of the actions of an independent third party . . . who is not a party to this action."  Brief of Appellant at 18.  In <u>Silvestri</u>, however, we concluded dismissal was proper even though the evidence was not in the possession of or controlled by the plaintiff or his attorneys:  "If a party cannot fulfill this duty to preserve <u>because he does not own or control the evidence</u>, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction. . . ."  <u>Silvestri</u>, 271 F.3d at 591 (emphasis added).

In sum, the district court concluded that the Kings were <u>at least negligent</u> in failing to take steps to ensure American Power received sufficient notice about the possibility of a claim that its product caused the fire or information regarding the location of the allegedly defective product.  As in <u>Silvestri</u>, the Kings' conduct, although perhaps insufficient by itself to justify dismissal, does not preclude dismissal because it is of sufficient culpability in light of the severity of the prejudice to American Power's ability to defend.  Accordingly, we reject the argument that the Kings' conduct prevents dismissal.

B.

The Kings also challenge the conclusion of the district court that American Power suffered irreparable prejudice without access

12

to the UPS unit.  The Kings suggest that American Power is adequately positioned to mount a defense by having its own experts review the written reports of Kissel, Elrod, and Booth, and by deposing these individuals.  American Power also has available evidence developed by the Kings for their case, including items such as photographs.

We cannot agree.  Unquestionably, the UPS unit is absolutely central to the claim by the Kings that the American Power UPS unit overheated and caused the fire that destroyed the Kings' store and its contents.  American Power is left without any physical evidence and must rely primarily on Kissel's report which itself indicated that further testing was required before any definitive conclusion could be formed.  These facts are strikingly similar to those in Silvestri, where the defendant manufacturer was faced, in the absence of physical evidence, with having to rely upon inconclusive findings derived from evidence gathered by the plaintiff's experts. American Power has no adequate means to defend against the claims at issue.

Accordingly, the only remaining issue is whether the district court could have imposed a lesser sanction.  As the district court noted, the exclusion of the investigatory reports or testimony from the consultants was not an option as the Kings would be rendered unable to prove their case.  On appeal, the Kings argue that the district court could have issued "an adverse inference instruction

to the jury."  Brief of Appellant at 26.  The Kings fail to suggest specific language that would have protected American Power, and we cannot conceive of how such an instruction would adequately level the playing field under the circumstances of this case.  More importantly, we cannot conclude that the district court's selection of dismissal as a sanction, as opposed to a limiting instruction, amounted to an abuse of the district court's broad discretion.

III.

For the reasons set forth above, we affirm the decision of the district court.

AFFIRMED