**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 24-7015**

———————————

EMMANUEL KING SHAW,

　　　　　Plaintiff - Appellee,

　　v.

T. S. FOREMAN, Unit Manager; M. MURPHY, Unit Manager; T. LENBOUGH, Hearings Officer; N. L. LEACH; F. L. ADAMS, Lieutenant,

　　　　　Defendants – Appellants.

———————————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:18-cv-01286-CMH-IDD)

———————————

Argued:  March 18, 2026　　　　　　　　　　　Decided:  June 4, 2026

———————————

Before GREGORY, WYNN, and BERNER, Circuit Judges.

———————————

Vacated and remanded by published opinion.  Judge Gregory wrote the opinion, in which Judge Wynn and Judge Berner joined.

———————————

**ARGUED:**  Emma Rose Bagwell, Chandler S.K. Cresswell, UNIVERSITY OF GEORGIA SCHOOL OF LAW, Athens, Georgia, for Appellant.  Tillman J. Breckenridge, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.  **ON BRIEF:**  Thomas V. Burch, Appellate Litigation Clinic, UNIVERSITY OF GEORGIA SCHOOL OF LAW, Athens, Georgia, for Appellant.  Jason S. Miyares, Attorney General, Kevin M. Gallagher, Solicitor General, Meredith L. Baker, Deputy Solicitor General, Ethan C. Treacy, Assistant Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

———————————

GREGORY, Circuit Judge:

Plaintiff brings procedural due process claims and First Amendment retaliation claims against prison officials. While incarcerated, Plaintiff was accused of an indecent exposure offense. He claimed his innocence and repeatedly insisted that officials view allegedly exculpatory video footage. Officials repeatedly refused to watch this footage and ultimately convicted him of the offense. Despite Plaintiff's request to preserve the footage, Defendants failed to do so. During litigation, Plaintiff moved for spoliation sanctions.

The district court granted summary judgment in favor of Defendants while the sanctions motion was still pending before the magistrate judge. Plaintiff brings this appeal, arguing that the district court abused its discretion in failing to rule on the sanctions motion and that the district court erred in granting summary judgment. Because the footage at the heart of the sanctions motion was crucial to the merits of the case, we vacate the district court's decision and remand with instructions to consider the sanctions motion in full.

## I.

Plaintiff Emmanuel King Shaw is an incarcerated person who was serving time in Sussex 1 State Prison ("Sussex 1") in Virginia. In July 2017, Mr. Shaw was accused of an indecent exposure offense. Mr. Shaw repeatedly denied committing the offense and asked prison officials to check video footage from a RapidEye camera, which would allegedly show that when the alleged incident took place in a bathroom, Mr. Shaw was sitting in a stairwell elsewhere. According to Mr. Shaw, prison officials repeatedly declined to review

2

the video footage. Mr. Shaw filed several complaints related to the video footage, including to the Offender Discipline Unit in Richmond, Virginia.

Defendants, officials of Sussex 1, eventually found Mr. Shaw guilty of the indecent exposure offense after a delayed hearing and an extended stay in segregation. Defendants did not review the video footage at the hearing. Defendants claimed that this was because the RapidEye footage was of poor quality and "would not have aided" in the decision-making process. JA 214. Thereafter, based on this conviction and Mr. Shaw's several prior indecent exposure offense convictions, Defendants increased Mr. Shaw's security classification from Level 4 to Level 5. He was transferred to Red Onion State Prison ("Red Onion"), a maximum-security facility that only housed Level 5 prisoners.

Shortly after his transfer to Red Onion was approved, Mr. Shaw wrote to the Offender Discipline Unit to preserve the unreviewed and allegedly exculpatory video footage. Then in October 2018, Mr. Shaw brought this lawsuit, alleging a violation of his procedural due process rights and First Amendment retaliation. In July 2020, before the video footage was produced in discovery, the district court dismissed his due process claim for failure to state a claim. The district court also granted summary judgment in favor of Defendants on the First Amendment claim.

Mr. Shaw appealed. This Court reversed the district court on both claims. In doing so, we stated that "it defies logic and common sense that summary judgment was appropriate when the video evidence—core to Shaw's theory of vindication for the underlying disciplinary offense—had yet to surface." *Shaw v. Foreman*, 59 F.4th 121, 129 (4th Cir. 2023). We noted that the video "would likely bear profound consequences on the

3

claims in this dispute, depending on its depictions." *Id.* at 130. We further noted that the prison officials' failure to produce the video was "profoundly powerful circumstantial evidence that perhaps they did retaliate" and that their "failure to fortify themselves with such a simple and formidable defense to Shaw's allegations is highly suspect." *Id.* at 131.

Discovery proceeded on remand. It came to light that Defendants had failed to preserve the video footage despite Mr. Shaw's September 2017 request. Accordingly, Mr. Shaw moved for spoliation sanctions.

On January 19, 2024, the magistrate judge held a hearing on the motion for sanctions and requested supplemental briefing from the parties. That same day, the district court judge held a hearing on Defendants' renewed motion for summary judgement. Without waiting for the magistrate judge's determination on the sanctions issue—nor for supplemental briefing on the sanctions issue to be completed—the district court indicated three days later that it intended to grant the motion for summary judgment and struck the case from the trial calendar.

On September 20, 2024, the district court issued an opinion granting summary judgment in favor of Defendants on both the procedural due process and First Amendment retaliation claim. The district court found, among other things, that Mr. Shaw did not have a protected liberty interest at stake because the conditions at Red Onion were "materially indistinguishable" from the conditions at Sussex 1; that Mr. Shaw had not suffered an adverse act because transfer to a maximum-security prison was not enough to "deter a person of ordinary firmness from engaging" in protected speech; and that Mr. Shaw could not show that his speech was a "substantial or motivating factor" in his transfer because the

4

prison had an informal policy of transferring indecent exposure offense convicts, Mr. Shaw did not engage in protect speech until after his transfer, and the prison officials lacked knowledge of his protected speech. *Shaw v. Foreman*, No. 1:18-CV-1286, 2024 WL 4255266, at \*4, \*6–7 (E.D. Va. Sept. 20, 2024).

Critically, however, the district court never addressed the motion for sanctions on the spoliation of the video footage. On that basis, we must vacate the summary judgment decision and remand this case for a full consideration of the sanctions motion.[*]

## II.

We review a district court's ruling (or lack thereof) on spoliation sanctions for abuse of discretion. *See Wall v. Rasnick*, 42 F. 4th 214, 217 (4th Cir. 2022). "'A district court abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises.'" *Id.* at 220 (quoting *United States v. Nicholson*, 676 F.3d 376, 383 (4th Cir. 2012)). Because the district did not even discuss the undecided motion for sanctions, its decision appears to abuse discretion in all three ways.

We cannot construe the absence of discussion as a sound and deliberate decision that the sanctions motion has no effect on the outcome of the case. We—and the available evidence—have made clear that the video footage is central to the merits. In our 2023

---

[*] The Appellate Litigation Clinic at the University of Georgia School of Law represented Shaw as *pro bono* counsel. The panel commends University of Georgia law students, Emma Rose Bagwell and Chandler S. K. Creswell, for their excellent oral and written advocacy on behalf of Shaw as eligible law students pursuant to Local Appellate Rule 46(a).

opinion remanding this case, we stated that the footage "would likely bear profound consequences on the claims in dispute." *Shaw*, 59 F.4th at 130. We even noted that the prison officials' failure to produce the video was "profoundly powerful circumstantial evidence that perhaps they did retaliate." *Id.* at 131. We did so because the record reflects a repeated, urgent insistence by Mr. Shaw to review the footage, met with a repeated, deliberate refusal by the Defendants to do so. Mr. Shaw asked numerous individuals to review the evidence in the months leading up to his hearing, filed a Request for Documentary Evidence, filed an emergency grievance pleading for someone to review the footage, filed two informal complaints asking for a review of the footage, and wrote letters to the Offender Discipline Unit (which may never have been delivered by Defendants). When all failed, Mr. Shaw asked for the footage to be preserved for review in litigation. But Defendants have failed to do even that much.

Despite Defendant's argument that the footage is inconsequential, the record reflects that the contents were in fact crucial to Mr. Shaw's case. Put simply, Mr. Shaw could not have been properly transferred to Red Onion if the footage contents were exculpatory. That is because Red Onion only takes Level 5 prisoners, and prior to Mr. Shaw's July 2017 offense conviction, he was categorized at Level 4. Defendants contend that Mr. Shaw's security level was due to be increased because of his history of indecent exposure offenses. However, the record shows that Mr. Shaw's security level was increased to Level 5 *only after* his July 2017 offense conviction. In other words, it appears that the July 2017 offense conviction was the incident that finally triggered his security level increase.

6

Notably, Mr. Shaw's September 2017 transfer to Red Onion was with the company of nine other Sussex 1 prisoners who had also been convicted of indecent exposure offenses. Around that time, Sussex 1 had been facing a problem with male prisoners exposing themselves and performing indecent acts to female staff members. Mr. Shaw was allegedly a "self-confessed gunner," which was a term for prisoners who would perform these indecent acts repeatedly. While these facts could indicate that in July 2017, Mr. Shaw fell into his patterns and in fact committed the offense, they could also cut the other way. Perhaps Mr. Shaw became aware of Sussex 1's intent to transfer a group of prisoners to Red Onion and accordingly changed his behavior to avoid the transfer. Perhaps that is why Mr. Shaw has been insistent on a review of allegedly exculpatory video footage.

Regardless, the bottom line is that the video footage was crucial to the merits of the case. The magistrate judge accordingly called for both a hearing and supplemental briefing on spoliation sanctions. While most motions for sanctions are non-dispositive pretrial matters, in some situations, the nature of the sanction imposed is so severe that the sanction is functionally dispositive or results in an adverse inference that may subsequently defeat summary judgment. *See, e.g.*, *Cole v. Keller Indus., Inc.*, 132 F.3d 1044, 1046 (4th Cir. 1998) (noting that where bad faith is involved in a spoliation sanction, the penalty may be a terminating sanction); *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 519 (D. Md. 2009) (noting that sanctions of dismissal may be warranted where "the spoliator's conduct was so egregious as to amount to a forfeiture of his claim" and "the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim"); *Wall*, 42 F.4th at 222–23 (explaining the range of remedies available

7

under Federal Rule of Civil Procedure 37(e)(1)).  Even if the criteria for dispositive sanctions are not met in this case, the significance of the footage—emphasized by our prior opinion and highlighted by the available evidence—warranted, at minimum, a complete consideration of the sanctions motion.

Accordingly, we find that the district court abused its discretion by granting summary judgment without considering the sanctions motion.  On that basis, we vacate the decision and remand with instructions to address Plaintiff's motion for sanctions.

*VACATED AND REMANDED*